McCustian vs, Ramey, Adm'r.

---

## McCustian vs. Ramey, adm'r.

1. Limitation —Statute of : *When it begins to run against an estate.*
   The statute does not begin to run against an estate until the appointment of an administrator.
2. Payment : *To heirs no discharge of liability to administrator.*
   One who holds the money of an estate, cannot discharge his liability to the administrator by payment to heirs.

3.  ADMINISTRATOR: *Liability to stranger for funds administered by mistake.*
    An executor or administrator receiving money by mistake as assets of his dece-
    dent's estate, will not be excused from his liability to refund the same on the
    ground that the money has been applied by him in the course of adminis-
    tration.

APPEAL from *Washington* Circuit Court.

Hon. J. M. PITTMAN, Circuit Judge.

*J. D. Walker*, for appellant.

ENGLISH, CH. J. :

Benjamin Ramey, administrator *de bonis non* of the estate of
Aaron Mills, deceased, commenced this suit against William R.
McCustian, in the Circuit Court of Washington County, on
the 23d of December, 1875.

The complaint alleged, in substance, that about the 16th of
July, 1865, the defendant had and received $1400, due and be-
longing to the estate of Aaron Mills, deceased ; and that on
the 6th day of March, 1875, letters of administration *de bonis
non* of said estate, were granted to the plaintiff by the Probate
Court of Washington County ; and no part of said sum had
been paid, etc.

The defendant answered, denying that he was indebted to
the plaintiff, or that he had received said sum of money, or
any part of it, as alleged ; and alleging that the plaintiff's
cause of action did not accrue within three years next before
the commencement of the suit.

The cause was submitted to a jury on the 15th of May, 1876,
and verdict and judgment in favor of plaintiff for $1141.85,
motion for new trial overruled, bill of exceptions, and appeal
by defendant.

There was evidence upon the trial conducing to show, that
Seth Mills, the first administrator of Aaron Mills, deceased,
loaned money belonging to the estate of his intestate to George

Lewis, Jr., and took a note and mortgage upon land, to secure the loan.

That Seth Mills died in February, 1864, and appellant, McCustian, became his administrator, and the note and mortgage came into his hands.

It is probable that the note and mortgage were taken by Seth Mills, payable to himself personally, and not as administrator of Aaron Mills; but the appellant married the widow of Seth Mills, and there can be but little doubt, from the evidence, but that he was informed that the note and mortgage in fact belonged to the estate of Aaron Mills.

The appellee proved by the admissions of appellant to several witnesses, that the mortgsge debt belonged to·the estate of Aaron Mills, and that he had in his hands other claims belonging to the same estate.

Appellee was permitted to read in evidence from record E, p. 388, of the Probate Court of Washington County, the following entry:

"Estate of Seth Mills, deceased. Upon the application of Wm. McCustian, administrator of said estate, and it appearing that he has in his possession the sum of $933.60, being the principal and interest of a mortgage debt on George Lewis, and that said debt belongs to the heirs of Aaron Mills, deceased. It is ordered by the court that said administrator be allowed to pay to the heirs of said Aaron Mills, their distributive shares of said amount, and be credited with the same as administrator of Seth Mills, to the extent of the charge against him as such administrator."

Appellee also read in evidence from the same record, p. 672, the following entry:

"In the matter of the estate of Seth Mills, deceased: Comes on this day, William R. McCustian, as administrator of the estate of Seth Mills, deceased, and shows to the court that a

decree has been rendered on the 14th February, 1867, in the Circuit Court of Washington County, in Chancery, in his favor against George Lewis, Jr. ; that a large amount of said decree has been paid off and satisfied, and the mortgage premises, in said decree mentioned, sold, and that there is still a balance due on said decree ; that said George Lewis has no property, as far as he is able to ascertain, subject to execution ; and asks the court to permit and allow him to compromise said claim and demand against said George Lewis, Jr.   It is therefore ordered by the court that the said William R. McCustian, as administrator of the estate of said Seth Mills, deceased, be and he is hereby authorized to compromise said claim with the said George Lewis, Jr., and to receive the sum of one hundred and seventy-five dollars in full satisfaction of the balance due on said decree.''

The appellee testified that about six months before the trial, and just before the commencement of the suit, he demanded of appellant the money claimed in the complaint, and he said he did not have it.

Appellant testified for himself that he collected the amount due on the Lewis mortgage, as administrator of Seth Mills, and paid it out in good faith in due course of administration, believing it to belong to Seth Mills' estate.   He denied telling any one that the money belonged to the estate of Aaron Mills, or his heirs.   That he knew nothing about the probate record entry read in evidence by appellee, or upon whose motion it was made.   That all the money he received upon the mortgage was collected in 1871.

It was admitted that he was discharged from his administration of the estate of Seth Mills, 4th September, 1873.

He stated in general terms, that as administrator of Seth Mills, he had collected and duly administered the money collected upon the Lewis mortgage, but to whom he paid it, or what particular disposition he made of it, he did not state.

It appears from the testimony of B. J. Johnson, a witness for appellee, that there were seven heirs of Aaron Mills, and that appellant had paid the shares of all but two of them. No payment appears to have been made by him to appellee as administrator *de bonis non* of Aaron Mills.

The court gave the following instructions to the jury, on behalf of appellee, appellant objecting to them severally :

*First*—"If you find from the evidence that the defendant collected money from George Lewis, or any one else, that he knew was going to the estate of Aaron Mills, you will find for the plaintiff, unless you find that he has paid the same to the administrator of said Mills, or that plaintiff's right of action accrued more than three years before bringing this suit.

*Second*—"If you find from the evidence, that after the death of Aaron Mills, Seth Mills administered upon his estate, and that after the death of said Seth Mills, the defendant collected money that he knew to be going to or belonging to the estate of Aaron Mills, the statute of limitations would not commence running in favor of defendant until letters of administration *de bonis non* were granted upon the estate of Aaron Mills.

*Third*—"I charge you, that if you find from the evidence, that the defendant collected or received any money belonging to the estate of Aaron Mills, deceased, after the death of Seth Milis, either as the administrator of the estate of said Seth Mills, or in his individual capacity, knowing the same to belong to the estate of Aaron Mills, no payment made by him to any other person than the executor or administrator of the estate of Aaron Mills, deceased, would be legitimate, and protect him in an action by said executor or administrator, and if you find the defendant did receive such money, you will find for the plaintiff the amount so received, with interest thereon from demand, at the rate of 6 per cent. per annum."

The appellant moved ten instructions, of which the court gave the first, fifth, sixth and ninth, and refused the second, third, fourth, seventh, eighth and tenth.

Those refused are as follows ;

*Second*—" That though the jury may find from the evidence that defendant received money belonging to the estate of Aaron Mills, deceased, the statute of limitation would commence running against said estate from the time the defendant received the same, whether there had been an administrator appointed on the estate of Aaron Mills, or not, unless defendant held the same as a trustee of an express trust.

*Third*—"If the jury find from the evidence that the defendant, either individually, or as administrator of the estate of Seth Mills, deceased, for three years before the commencement of this suit, held the peaceable, continuing and adverse possession of the money in controversy, they should find for the defendant.

*Fourth*—" If it be shown in evidence by defendant that he held possession of the money in controversy for three years next before the commencement of this suit, the presumption would be that he held it adversely, and it would devolve on the plaintiff to show that he did not hold it adversely.

*Seventh*—" If the jury should find from the evidence, that Seth Mills was the administrator of Aaron Mills, deceased, and as such had money in his hands belonging to the estate of Aaron Mills, and loaned the same to George Lewis, and took a note and mortgage to himself individually, and thereafter the same came to the hands of defendant, as administrator of Seth Mills, deceased ; and that in due course of administration the same was collected by defendant as such administrator, and by him treated and paid out as assets belonging to the estate of Seth Mills, in the course of such administration, they should not find against defendant for the same.

*Eighth*—"If the jury believe from the evidence that defendant, as the administrator of Seth Mills, collected and held in his possession money belonging to the estate of Aaron Mills, and that he paid out the same as assets of Seth Mills' estate, and was duly discharged from said administration, he cannot be individually held responsible for such money in this suit.

*Tenth*—"That upon all the facts proved in this cause, and admitting all to be proved, which the evidences conduce to prove, the plaintiff is not entitled to a recovery in this cause."

I. No doubt, from the evidence, appellant received the money in controversy more than three years before the commencement of this suit, but appellee had no right of action until he was appointed administrator *de bonis non* of Aaron Mills, and his right of action could not be barred by limitation before it accrued. At the time appellant received the money, there was no administrator of the estate of Aaron Mills, to which (the jury found from the evidence) the money belonged, and the statute of limitation did not commence running until an administrator was appointed. *Brown, adm'r, v. Merrick et al.,* 16 Ark., 614; Angel on Limitation, page 55; *Murray* v. *East India Co.,* 5 Barn. and Ald. R., 204; 18. Ala., 331; 10 Yerger, 383; 39 Mo., 301.

II. The heirs of Aaron Mills could not sue appellant for the money because they had no direct legal cause of action against him; nor could he legally discharge himself from liability to the administrator, when appointed, by paying the money to the heirs. After the claims of creditors are paid by the administrator, the heirs get the remainder of personal assets by distribution through the Probate Court, as provided by the statute. *Lemon's heirs* v. *Rector,* 15 Ark., 437; *Pryor* v. *Rayburne,* 16 Ib., 671; *Anthony* v. *Peay,* 18 Ib., 24; *Aikins* v. *Guice,* 21 Ib., 164; *Jacks* v. *Adair,* 30 Ark., 625; *Collins et al.* v. *Warner, adm'r,* 32 Ib., 91.

McCustian vs. Ramey, Adm'r.

The court did not err in giving the three instructions moved for appellee, nor in refusing the second, third and fourth asked for appellant.

III. "An executor receiving money by mistake from a supposed debtor of the testator, will not be excused from his liability to refund the same, upon the ground that the money has been applied by him in the course of administration.

" The executor and brother of a mortgagee received, after the mortgagor's death, £700, supposed to be due on the mortgage. Afterwards, it appeared, by a copy of an account under the mortgagee's own hand, that a part of the money had been paid by tlfe mortgagor in his life time. To a bill brought to be relieved against this overpayment, the defendant, the executor of the mortgagee, answered and insisted that before any notice of the plaintiff's demand on account of this overpayment, the defendant, as executor of the mortgagee, had paid away the £700 in his testator's debts. Nevertheless, it was determined that the money overpaid should be paid back by the executor, and he be at liberty to sue such creditors as through mistake he had paid, to make them refund. It was said by COWPER, Chancellor, that though this might be a hard case, yet if the plaintiff had a right to be repaid his money, which he had overpaid on the mortgage, the right could not be overthrown by the defendant, the executor, applying the money in any manner he should think fit, any more than if an executor at law should recover a debt, and pay his testator's debts with it, and afterward this judgment recovered by the executor is reversed in error, the executor must restore the money to the plaintiff in error, and his having paid it away in his testator's debts, will not excuse him from paying it back. So, in the same manner, if there was a decree, for the executor to be paid a sum of money by the defendant, and the executor having received the money, pays it away in debts, and

then the defendant, against whom the executor had recovered the decree, brings an appeal and reverses the decree, the plaintiff in the appeal shall be restored to the money. It would be otherwise if the defendant had delayed the appeal, and willingly stood by whilst the executor paid away this money to the testator's creditors; for this would be drawing the executor into a snare; but nothing of that kind appeared in that case. And it was, moreover, considered that, though the payment of the money by the executor, among the testator's creditors, was an accident which fell hard upon him, yet it was impossible for the plaintiff to make them parties." 2 Lomax on Executors (2nd edition), p. 465–6; *Pooley et al.* v. *Ray*, 1 Peere Williams, 355; *Hircy* v. *Dinwood*, 2 Vesey, Jr., p. 92–3; *Pickering* v. *Lord Stamford*, Ib. 582.

" And if an administrator sell a chattel which was in the intestate's possession at his death, he will be personally liable in trover to one who was in truth the owner, for the value of the chattel, notwithstanding the administrator applied the proceeds of the sale of the chattel to the payment of the intestate's debts in due course of administration, and had no notice of the right of the true owner." 2 Lomax on Executors, (2 Ed.) page 466. *Newsom* v. *Newsom*, 1 Leigh, 86.

The facts in this case are stronger against appellant than in the cases cited. Here the evidence conduces to prove that he was informed that the money collected by him on the mortgage belonged to the estate of Aaron Mills, and yet he attempts to defeat this suit for the money by his administrator, by stating that he collected it as administrator of Seth Mills, and disposed of it in due course of administration. This if true was not a good defense to the suit. In the case last above cited, where the intestate died in possession of a chattel, which came to the hands of his administrator, who in good faith sold it, and administered the money. JUSTICE CARR, said:

" The right of the owner to sue for his property, can never depend upon such circumstances as these. The administrator when he sells property as belonging to his intestate, acts at his peril. If he sells my property he must answer to me for it, however he may have thought himself bound by law to sell, and however fairly he may have applied the proceeds to the debts of his intestate."

It follows that the court below did not err in refusing the seventh, eighth and tenth instructions moved for appellant.

Whether there are any unpaid creditors of the estate of Aaron Mills or not, is not made to appear in the case before us. If not, his heirs will be entitled to have the money collected in this suit distributed among them, after payment of the expenses of administration. If in fact appellant has paid the shares of five of them as stated by the witness, Johnson, it would not be equitable for the appellee to pay them again out of the money recovered of appellant in this suit, but their shares should, by subrogation, be distributed to appellant.

But this being a suit at law by the administrator of Aaron Mills against appellant for money collected by him belonging to that estate, it is no defense, as we have seen, that he paid to some of the heirs their shares, they having no legal right to collect it of him, and the right of action being in the administrator of Aaron Mills.

Judgment affirmed.