## FREEMAN *v.* LAZARUS.

## Opinion delivered November 2, 1895.

| | |
|---|---|
| 61 | 247 |
| 73 | 191 |
| 73 | 192 |
| 73 | 193 |
| f73 | 369 |
| 76 | 170 |
| 61 | 247 |
| f79 | 505 |
| 61 | 247 |
| 84 | 331 |
| 61 | 247 |
| 86 | 270 |

JURISDICTION OF COUNTY COURTS—ELECTION CONTESTS.—The county court has jurisdiction to determine a contest of the vote upon the question of liquor license, and, if fraud be shown, to purge the polls, under Sand. &. H. Dig. secs. 4868, 4869, directing all returns from such elections to be laid before the county court, and that if the majority of the votes cast in the county be not for license, it shall be unlawful for the county court to grant a license, but if a majority of votes be for license, then it shall be lawful for the county court to grant license.

ELECTIONS—RECOUNT BY COMMISSIONERS—CONCLUSIVENESS.—The recount of the votes of a township by the election commissioners in an election on the license question does not preclude a contest of the election in the courts.

INTERVENTION—NOTICE.—One who is allowed to intervene and resist a petition for license to sell liquors cannot afterwards object on the ground that he had no notice of the proceeding.

APPEAL FROM COUNTY COURT—AMENDMENT.—On appeal from the county court, the circuit court may permit amendments to be made to the petition or statement of the plaintiff's cause of action, so as to make it more definite and certain, provided that such amendments do not change the cause of action.

ELECTION—MISCONDUCT OF JUDGES.—A finding that the judges of an election in a designated township were guilty of fraud invalidating the election is sustained by uncontradicted evidence that the judges electioneered with the voters in the booths, and urged them to allow such judges to prepare their ballots, that a large number of ballots were prepared by one judge, instead of by two as required by the statute, and that they were prepared directly contrary to the expressed wishes of the voters.

ELECTION CONTEST—EVIDENCE — CONTRADICTING BALLOT.—A voter may be permitted to contradict his ballot, in an election contest, where it is shown that the ballot was prepared for him by one judge instead of by two, as required by Sand. &. H. Dig. sec. 2652.

Appeal from Ouachita Circuit Court.

CHARLES W. SMITH, Judge.

STATEMENT BY THE COURT.

This was a contest before the county court of Ouachita county to determine whether a majority of the votes cast in said county at the election in September, 1894, were cast ": for license" or "against license." It was begun by the appellees, Lazarus & Levy, who filed an application for license, alleging that a majority of the qualified electors voting at said election had voted "for license," but that, through the willful misconduct of the judges of said election in Bragg township in said county, the ballots cast in that township had been prepared so as to show a different result. They asked that the court inquire into the election in said township, and declare that a majority of the votes cast in said county were cast "for license."

After the filing of the petition by Lazarus & Levy, the appellants, J. A. Freeman and other citizens of that

county, came in, and asked and obtained leave to become parties defendant, and resisted the petition of appellees.

The county court found in favor of petitioners that a majority of the votes cast were "for license," and an appeal was taken to the circuit court. On the trial *de novo* in the circuit court, the returns of the election were introduced, and showed that the vote of the county, excluding Bragg township, was 945 for license, and 929 against license,—a majority of 16 for license. The returns from Bragg township showed 12 votes for license and 99 against license. The other facts sufficiently appear in the opinion.

After hearing all the evidence the circuit court found that "by reason of fraud practiced by the judges of the election held on the first Monday in September, 1894, in Bragg township, Ouachita county, Arkansas, the returns of said election prepared and certified by them were unreliable and worthless, and that the court was unable to determine the true vote of the qualified electors of said township upon the question of "for license" or "against license."

The court therefore cast out and rejected the returns from said township, and found that, excluding Bragg township, the vote in the remainder of the county of Ouachita stood 16 majority "for license," and gave judgment accordingly.

*Thornton & Thornton* and *Met. L. Jones* for appellants.

1. A voter is not allowed, after the returns of an election have been perfected, and a contest inaugurated, to dispute the contents of his ballot, as returned by the election officers. Cooley, Const. Lim. (6 ed.) pp. 788, 78, 790; 5 Den. (N. Y.) 409; 33 Kas. 202; 31 *id.* 435; 16 Mich. 283; 41 Ark. 111.

2. Fraud is not presumed, but must be proved. 6 Am. & Eng. Enc. Law, 354, sec. 4. The returns, when regular, are conclusive on the canvassing officers, and are *prima facie* evidence, and the burden is on the contestant to assail their correctness. 11 N. Y. 539; 5 Neb. 509. See also, 94 Ill. 515; 64 Tex. 500; 79 N. Y. 279; 26 Minn. 529; 28 Cal. 123; 11 Wheat. 408; 4 S. W. 351; 5 Cong. El. Cases, 124.

3. After deducting illegal votes, there was still a majority against license. As to the question of residence and abandonment, temporary absence, etc., see 81 Ill. 541; 44 *id.* 16; 32 Ala. 793; 8 *id.* 159; 7 Fla. 81; 11 Mass. 350; 29 Ala. 793; 33 Mich. 241.

4. It is only when the voter cannot read or write, or is physically disabled, that he *may* have the aid of two judges. The word *may* is not potential here, as against the election officers. If the party offering to vote wanted the judges to make out his ballot, and he could not make it out himself, then the word *may* becomes, as to the election officers, equivalent to *shall;* but where they are not by the statutes allowed to have an officer to make out their ticket, as a strict legal right, but he performs the duty as a mere accommodation, he becomes the agent of the voter, for which the principal is responsible, and he and all persons interested in his acts must abide the consequences. There is nothing immoral in this agency, for any agency may be created for the transaction of any lawful business, and whatever a person might lawfully do, if acting in his own right, and in his own behalf, he may lawfully delegate to an agent. Mechem on Agency, sec. 18; Story on Agency, sec. 6. See also 22 How. 434; 1 Pet. 64.

*Smead & Powell* and *T. J. Gaughan* for appellees.

1. The question of license is a matter of local concern. 33 Ark. 191; 43 *id.* 62. The county court prop-

erly assumed jurisdiction. Const. art. 19, sec. 24; Acts Jan. 23, 1875; 51 Ark. 558; Art. 3, sec. 11, const.

2. The ballots, if carefully preserved, and not tampered with, are the best evidence; but fraud can always be enquired into, especially when the ballot *is not prepared* by the voter. 8 Cow. (N. Y.) 102; 5 Denio (N. Y.), 410; 20 Wend. 12. Upon a charge of fraud against the *officers*, ballots may be impeached. 13 N. E. 700; 26 *id.* 704; McCrary on Elections (2 ed.), sec. 386; 2 Parsons, 584. A voter can testify as to whom he voted for. 2 Bartlett, 822; 1 *id.* 522. Where the attack is made for fraud, the court will proceed without reference to what appears on the face of the returns. McCrary on Elections (2 ed.), p. 309. The returns, etc., though conclusive upon the canvassers, may be impeached, and it is the duty of the tribunal to ascertain who was in fact elected. McCrary on El. (2 ed.) sec. 290; 5 Rawle, 77; McCrary, El. p. 137, 99, 100.

3. When returns are shown to be untrustworthy by reason of fraud of the judges, they are cast aside, and the true vote ascertained by other evidence. 41 Ark. 62; 54 *id.* 174; McCrary, El. (2 ed.) par. 441; *Ib.* secs. 184, 304, 305, 442.

4. The declarations asked by appellants were erroneous. By sec. 34, art. 29, Acts 1891, it is the duty of the judges to prepare ballots for electors who cannot read or write. If he can read or write, the judges *are not permitted* to prepare the ballot. And *two* judges *must* be present, not one.

RIDDICK, J., (after stating the facts). The first contention of the appellants is that the county court had no right to hear and decide a contest concerning the result of an election upon the question of granting or refusing liquor license. The object in holding such an election is to determine whether or not the county court may grant such license in the county where the election

Jurisdiction of county courts over election contests.

is held. The statute directs that all returns from such elections "shall be sealed up and forwarded to the clerk of the proper county, and by him laid before the county court. * * * * * If at such election the majority of the votes cast in any county upon the question be not 'for license,' then it shall be unlawful for the county court of such county to grant license. * * * But if a majority of the votes cast in any county upon the question be 'for license,' then it shall be lawful for the county court of such county to grant license, etc." Secs. 4868 & 4869, Sand. & H. Dig.

Under this statute, it is the duty of the county court, before granting license for the sale of liquor, to determine whether a majority of the votes of the county have been cast for or against license. This, we think, gives that court the power, in a proper proceeding, to inquire whether the vote has been fairly taken, and, if fraud be shown, the right to purge the polls.

It is now well settled that the county courts of this state have the right to determine contests concerning the result of elections for the location or removal of county seats, on the ground that it is a matter of local concern, over which the county court have jurisdiction. The issuance of license to sell liquors is a matter of local concern, as much so as the removal of a county seat; and the circuit court correctly held that the jurisdiction to determine a contest of the vote upon the question of liquor license is in the county court. *Russell* v. *Jacoway*, 33 Ark. 191; *Williford* v. *State*, 43 Ark. 62; Const. 1874, art. 7, sec. 21; *Glidewell* v. *Martin*, 51 Ark. 558.

Conclusiveness of recount of votes by commissioners.

It is also contended that the recount of the votes of Bragg township by the election commissioners is conclusive upon appellees, and precludes a contest of the election in the courts, but we hold that this is not so. The commissioners, in making this recount, had only the

power the judges of the election had in the first instance. Their findings, while conclusive in collateral proceedings, and *prima facie* evidence when directly assailed, may yet be inquired into, and corrected by proper proceedings in the courts. Cooley's Const. Lim. (6 ed.) 788 ; Sand. & H. Dig. sec 2670.

Neither do we think that the appellants can rightly object to want of notice. They came forward of their own motion, were made parties defendant, and allowed to respond to and resist the petition of appellees. As every citizen of the county was interested in the question at issue, and, as it was impracticable to bring all of them before the court, the appellants were properly allowed to appear and defend for all. Sand. & H. Dig. sec. 5632. But, having thus voluntarily appeared, they could not afterwards be allowed to say they had no notice. *St. Louis, etc., R. Co.* v. *Barnes*, 35 Ark. 95; *Murphy* v. *Williams*, 1 Ark. 384, and note to annotated edition.

*Right of intervener to notice.*

Before hearing the cause on appeal, the circuit court granted leave to the contestants to make certain amendments to their petition. It is asserted that this was beyond its power; but we do not think so. The circuit court, on appeals from the county courts or other courts, may permit amendments to be made to the petition or statement of the plaintiffs' cause of action, so as to make it more definite and certain, provided that such amendment does not change the cause of action. Such amendments are within the discretion of the circuit court, and no abuse of that discretion has been shown in this case. *Railway Co.* v. *Lindsay*, 55 Ark. 282.

*Amendments in circuit court on appeal.*

After hearing the evidence, the circuit court found that, by reason of fraud practiced by the judges of said election in Bragg township of Ouachita county, the returns of election prepared and certified by them were unreliable and worthless, and that the court was unable

*Effect of misconduct of election judges.*

to determine from the evidence the true vote of said township upon the question of license.

Before considering the evidence bearing on this point, we will notice the statute under which the election was held. The act of March 4th, 1891, entitled "An act to regulate elections in the state of Arkansas," was an effort on the part of the legislature to protect the voter against undue influences of all kinds at the polls, and to secure, through the ballot-box, a genuine expression of the will of the electors of the county and state. To effect this end, there are stringent regulations for the protection of the voter against interference or influence while at the polls. The act provides that no person whomsover shall do any electioneering in any polling room, or within one hundred feet of any polling room, on election day; and it especially prohibits officers of the election from electioneering on election day. A violation of this prohibition is made a felony, punishable by imprisonment in the penitentiary not less than one nor more than three years. Sand. & H. Dig. sec. 2656.

To insure the elector against interference or influence while preparing and depositing his ballot, the statute directs that booths shall be prepared and furnished with table, shelf, or desk for the convenience of the electors in preparing their ballots. It provides that the walls of the booths shall be "so constructed as to enable each elector to enter therein, and prepare his ballot free from the interference of any person whomsoever." It directs that, except as the electors are admitted and pass in one at a time to vote, no person shall, under any pretext whatever, be permitted in the polling room, from the opening of the polls until the completion of the count of the ballots. With above exceptions, no person is permitted to come nearer than fifty feet of any door or window of a polling room. Sand. & H. Dig. sec. 2629.

From these and other provisions of the statute is plainly evident the intention of the legislature to free the voter from all extraneous influence, and to make his ballot an expression of his own will. The act designates certain officers whose duty it is to see that elections are conducted as required by the statute. But the legislature, by language which can admit of neither controversy or doubt, has forbidden these officials from doing anything whatever that should in any way influence the elector in casting his ballot.

To guard against this as carefully as possible, and to omit no reasonable safe-guard, it provides, in the case of those electors who cannot read or write, or who, from physical disability, are unable to prepare their ballots, that they may call upon the judges to assist in the preparation of their ballots; but the act expressly provides that this shall be done by two of the judges, who, "in the presence of the elector and in the presence of each other, shall prepare his ballot as he wishes to vote." The language of the statute on this point is noteworthy, for it requires that not one but two judges shall assist in the preparation of the ballot, and that, in the presence of the elector and in the presence of each other, they "shall prepare his ballot as he wishes to vote." Sand. & H. Dig. sec. 2652. We do not understand by this that two judges shall perform the manual labor of writing the ballot, but that the legislature intended by this language to make clear the injunction that, whenever a voter requires assistance in the preparation of his ballot, two judges must not only be present with the elector while preparing the ballot, but that both must be actively engaged in seeing that the ballot is prepared as the elector directs it to be prepared, without solicitation or influence of any kind whatever.

In the light of this statute we will now look at the evidence upon which the circuit judge based his findings

and judgment. There was evidence at the trial that one of the judges of the election distributed tracts on election day for the purpose of influencing the voters to vote against license; that the judges of the election electioneered with the voters in the election booths, and used their influence to control votes against license. Many of the voters were unable to read, but the judges did not wait to be requested by the voter to prepare the ballot, but at times solicited the voters to allow them to prepare their ballots. By this means they were permitted to prepare the ballots for many voters who were entirely able to prepare their own ballots. Over half of the ballots cast in the township were prepared by the judges. The judge preparing the ballot did not do so in the presence of another judge, as required by the statute. The ballots, after being prepared by the judge, were folded by him, and returned to the voter, who then delivered it to another judge to be placed in the ballot-box. Over forty voters, only a few of whom could read, testified that they directed the judges to prepare their ballots "for license," and supposed at the time they cast their ballots that they were voting for license. The testimony of these witnesses is corroborated by the testimony of one of the clerks of the election, who testified that he overheard several of these witnesses direct the judges to prepare their ballots for license. But the ballots of these voters were written "against license." If this testimony was true, these electors, through the fraud of the judges preparing their ballots, were led ignorantly to vote contrary to their own wishes. But not one of the judges of the election was placed upon the stand to testify and rebut this array of testimony tending to show irregularities and official misconduct on their part.

"There is," says Judge McCrary in his work on elections, "a difference between fraud committed by offi-

cers, or with their knowledge and connivance, and a fraud committed by other persons, in this : the former is ordinarily fatal to the return, while the latter is not fatal, unless it appear that it rendered doubtful or changed the result. "If an officer is detected in a willful and deliberate fraud upon the ballot-box, the better opinion is that this will destroy the integrity of his official acts, even though the fraud discovered is not of itself sufficient to affect the result. The reason of the rule is that an officer who betrays his trust in one instance is shown to be capable of defrauding the electors, and his certificate is good for nothing." McCrary on Elections, sec. 539; *Judkins* v. *Hill*, 50 N. H. 140; *Patton* v. *Coates*, 41 Ark. 123; *Jones* v. *Glidewell*, 53 Ark. 174.

When we consider the evidence that the officers of election in Bragg township, in violation of the express statutory provision, electioneered with voters, and urged the voters to allow them to prepare their ballots ; that these ballots were not prepared by two judges in the presence of each other, as required by the statute, and that a large number of voters testified that the judge who prepared their ballots prepared them on the question of license directly contrary to their expressed wishes,—when these facts are considered along with the fact that no judge of the election was placed on the stand to rebut this testimony, nor any excuse shown why they were not made to testify, we can come to no other conclusion than that the evidence was sufficient to support the finding of the circuit court. It is not for us to speculate whether this testimony was true or not. The circuit judge who heard it, and who saw and observed the witnesses upon the stand, has based his findings upon it, and we must assume that it is true. The rule is that if the facts given in evidence, admitting them to be true, and the reasonable inferences therefrom,

support the finding of the circuit court, the appellate court should not reverse for want of evidence.

<span style="float:left">When voter may contra-dict his ballot.</span> It is strenuously contended that a voter should not be heard to contradict his own ballot. When the ballot has been prepared by the voter himself, and afterwards securely kept by the lawful custodians thereof, this would, doubtless, be the true rule. In such a case the ballot would be the best evidence. *Hudson* v. *Solomon*, 19 Kas. 177; McCrary on Elections, sec. 44*e*.

There might even be force in the argument when the ballot is prepared by two judges in accordance with the statute, and there are not strong circumstances, apart from the testimony of the voter, tending to show fraud on the part of the judges. When the ballot has been thus lawfully prepared and safely kept, there is certainly a strong presumption in favor of its correctness, whether it be conclusive or not.

But we need not pass on that question, for it is not before us in this case. The judges in Bragg township did not comply with the statute in the preparation of the ballots. The ballots should have been prepared by two judges in the presence of the elector, and in the presence of each other, for such is the requirement of the statute,—to prevent just such a controversy as we have here. The failure of the judges to obey this mandate of the statute cast discredit upon the ballots thus prepared; and when a large number of the electors testified that these ballots were not prepared in accordance with their directions, the circuit court was justified in considering the testimony in connection with other evidence, and in giving it such weight as he deemed proper.

As there was evidence to support the finding of the circuit court that the judges of the election in Bragg township were guilty of fraud in the conduct of the election, that finding must stand. *Jones* v. *Glidewell*, 53 Ark. 174. In the absence of other evidence showing

the true vote of that township, such finding justified the circuit court in rejecting the vote of that township.

There were other questions discussed by counsel, but, as our conclusion on this point compels us to uphold the judgment rendered by the circuit court, we need not discuss them. The judgment of the circuit court is affirmed.