McGRAW *v.* MILLER.

Opinion delivered December 7, 1931.

G. W. *Botts,* for appellant.

J. M. *Brice* and *Peyton Moncrief,* for appellee.

MEHAFFY, J. November 13, 1923, the appellant and John Pounders executed and delivered to Lige Miller their promissory note for $500, due and payable on or before May 13, 1924. No payments are credited on the note.

May 3, 1929, Mrs. Lige Miller, for herself and as next friend for her three minor children, Annie Mae Miller, Rlottie Miller, and Lige Miller, Jr., brought suit in the

circuit court of Arkansas County against C. E. McGraw, the appellant, to recover on said note. Lige Miller, the payee in said note, had been dead about two years. The appellant filed a demurrer, stating that there are not proper parties plaintiff, and that the complaint shows that the plaintiffs have no right to recover in this action against this defendant. The court overruled the demurrer, but permitted plaintiffs to amend their pleadings.

An amendment was filed more than five years after the cause of action accrued. Appellant filed a demurrer to amended complaint. In the amended complaint Mrs. Lige Miller sued as administratrix of the estate of Lige Miller, deceased, and as guardian of the minors and for the benefit of the estate.

As grounds of demurrer, the appellant stated: That the complaint does not state facts sufficient to constitute a cause of action against the defendant in the name of the plaintiff; that the complaint shows that the original party plaintiff had no cause of action against defendant; that said amended complaint shows that the party plaintiff had no cause of action against defendant in the original suit. Appellant further demurred, stating that there are not proper parties plaintiff to this cause, and because the complaint shows that plaintiffs have no right to recover against defendant.

The court overruled the demurrers; appellant saved his exceptions, and filed answer, pleading the statute of limitations. Appellant admitted giving the note, but testified that he had paid it to Miller before he died and before the note became due.

Appellant requested the court to give three instructions, which the court refused to give. Each instruction asked in effect directed a verdict for appellant.

It is undisputed that the first suit was filed before the cause of action was barred, and that the amendment was filed a few days more than five years after the cause of action accrued. It is the contention of the appellant that the amendment was the beginning of a new suit, and that it was barred by the statute of limitations. Attention is first called to the case of *Lambert* v. *Tucker,*

83 Ark. 416, 104 S. W. 131. That, however, was a suit in replevin, and the court held that the title and right to possession of the property must be determined by the status at the time of the commencement of the action. The administrator was held to be the person entitled to sue, and Tucker and his wife brought suit, but the court stated they showed no demand nor any refusal to give up the property, and that Lambert, having come peacefully into the possession of the property, detained it as the representative of the sisters of Ohaver. This was a contest between the representative and the heirs, and the court held that the right to possession was in the representative.

The court also said that neither the widow nor the heirs could disturb the possession of the other. It is contended, however, that the appointment of an administrator is conclusive as to the necessity. This is only true on collateral attack. In the instant case there is no attack, collateral or otherwise. It is true that the court said in the above case that the action of the probate court in appointing an administrator is conclusive of the necessity to appoint, but the court cited the case of *Stewart* v. *Smiley,* 46 Ark. 373, where the court held that the appointment could not be collaterally attacked. The appointment of administrator, however, is not conclusive except on collateral attack. In the instant case, the court declined to sustain appellant's demurrer, holding in effect that the plaintiffs in the suit had an interest, but that it was proper to have an administrator and guardian parties.

The next case to which attention is called is *Bertig* v. *Higgins,* 89 Ark. 70, 115 S. W. 935. The court in that case, however, said that the grant of letters of administration was conclusive of the necessity of appointment, but not of the right to take possession of the property, and it was decided in that case that the administrator had no right to the possession of the property.

Appellant also calls attention to the case of *Fencing District No. 6 of Woodruff County* v. *Mo. Pac. Rd. Co.,*

180 Ark. 488, 21 S. W. (2d) 959. In that case it appeared that suit had been brought originally against the St. Louis, Iron Mountain & Southern Railway Company, and the parties undertook to substitute for the sole defendant, the Missouri Pacific Railroad Company, a wholly different party. The first defendant had no interest whatever in the suit, and when a sole defendant or plaintiff is shown to have no interest in the suit, the substitution of another party, either plaintiff or defendant, for the sole plaintiff or defendant, would, of course, be the beginning of a new suit. The St. Louis, Iron Mountain & Southern Railroad Company had no interest in the suit, and there was therefore no suit pending against any defendant who had any interest in the litigation.

The statute (Crawford & Moses' Digest, § 1089): "Provides, every action must be prosecuted in the name of the real party in interest, except as provided in §§ 1091, 1092, 1094."

The widow and minor heirs, who were plaintiffs in the original suit, were the real parties in interest. Lige Miller had been dead about two years, according to the testimony, and the evidence does not show that there are any claims against his estate, or that he was indebted in any way. The fact that he was lending money is a circumstance tending to show that he was not indebted. However, there is no direct evidence as to whether the estate owed any debts or not, but the undisputed facts are that he had been dead about two years, and there is no showing that any person was claiming that he owed any debts, or that the property, including this note, did not belong to the widow and minor heirs; but, if he had been indebted, they still had an interest, and the amendment was not a substitution of a new party for the sole plaintiffs, but was the prosecution of the suit for the same parties in interest by their representatives.

In the case relied on by appellant, *Irby* v. *Dowdy*, 139 Ark. 299, 213 S. W. 737, the court said: "Had the suit been instituted, in the first place, by any one as the next friend of Herbert Irby, it would have been within the discretion of the court to have substituted his natural

guardian or any other person as next friend, for the next friend who had first brought the suit. * * * In the suit supposed, the infant would have been the real party in interest, and not the party who represented him, and the substitution of the natural guardian or another person as next friend would not have the effect of bringing a new cause of action." *Buckley* v. *Collins,* 119 Ark. 231, 177 S. W. 220; *St. L., I. M. & S. R. Co.* v. *Haist,* 71 Ark. 258, 72 S. W. 893.

The amendment in the instant case was not the bringing of a new suit, and the cause of action was therefore not barred by the statute of limitations.

It is unnecessary to set out the evidence because the appellant admits the execution of the note sued on, but he testified he had paid it by hauling logs for Miller during Miller's lifetime.

This court has repeatedly held that, where a party in interest testifies, his testimony is not to be regarded as undisputed. The question, however, as to whether he had paid the note, and the circumstances under which he claimed to have paid it, were questions of fact settled by the verdict of the jury against appellant, and the verdict is conclusive here.

The judgment of the circuit court is affirmed.

SMITH and HUMPHREYS, JJ., dissent.

SMITH, J., (dissenting). The only question of fact in this case was whether the note had been paid, and, as the majority say, that question was settled by the verdict of the jury adversely to appellant. His testimony on this issue was that he paid the note *before its maturity,* so that there was never a question of fact as to the arrest of the statute of limitations after the maturity of the note by a payment, partial or otherwise.

There was no allegation in the pleadings as to the existence or nonexistence of debts due by the intestate, the payee in the note, and no testimony whatever was offered on that subject.

The question whether the note was barred by the statute of limitations arises upon facts about which there

is no dispute, and it is therefore a question of law. These facts are as follows: The note was dated November 13, 1923. It matured May 13, 1924. Suit was filed by the widow and minor children on May 3, 1929, at which time the payee had been dead about two years. A demurrer, which questioned the right of the widow and minor chil-·dren to sue, was overruled, but leave to amend was given. A second or amended complaint was filed June 26, 1930, which was about six years and one-and-a-half months after the date of the maturity of the note and more than two years after the death of the payee in the note, and more than thirteen months after the first complaint had been filed.

In this second suit the widow alleged that she *is now* the administratrix of the estate and the guardian of her children, and that she sues in the capacities of administratrix and guardian. Except for the allegation that the widow *is now,* that is, at the time of filing the amended complaint, the administratrix and guardian, the record is silent as to when letters of administration issued. The letters were not offered in evidence, and we do not know when the widow became the administratrix except from the allegation that she *is now* the administratrix.

The record is silent as to the value of the estate as well as to the debts of the intestate. But the fact is that the widow herself has taken out letters of administration, and the law is well settled, as the majority say, that the appointment of an administrator, in the absence of any direct attack upon the appointment or appeal from that order, is conclusive of the necessity for an administration. *Sharp* v. *Himes,* 129 Ark. 327, 196 S. W. 131. Here the widow not only made no question as to the necessity for an administration, but has actually administered and seeks to recover in that capacity.

While there was no testimony as to the value of the intestate's estate, we know that it exceeds $300, as the suit is upon a note for $500, with five years' interest

thereon. Therefore, § 80, Crawford & Moses' Digest conferred upon the widow and minor children no right to sue.

This section of the statute was construed in the case of *Bertig* v. *Higgins,* 89 Ark. 70, 115 S. W. 935. That was a suit by the administratrix of an intestate whose estate was less than $300 in value. It was there held that under § 3 of Kirby's Digest (§ 80, Crawford & Moses' Digest), where the personal estate of a deceased person does not exceed in value the sum of $300, the title thereto vests in the widow and minor children of such person under the statute, and they alone are authorized to sue for its possession, and the judgment was reversed, and the case was dismissed because the administratrix did not have capacity to sue.

The decision in that case that the suit should have been brought by the widow and not by herself as administratrix, although the widow was also the administratrix, was based upon the fact, expressly stated, that the value of the estate did not exceed $300, and upon that ground the case was distinguished from the case of *Lambert* v. *Tucker,* 83 Ark. 416, 104 S. W. 131. In the latter case the value of the estate of the intestate was variously estimated from seven hundred to a thousand dollars in value, and being, as the opinion recites, in excess of $300, the administrator was permitted to recover from the possession of the widow the two mules and wagon there in litigation. The court said: "Neither the widow nor the heirs could disturb the possession of the other. But the administrator could disturb the possession of both, and he would be entitled to the intestate's personal property. The action of the probate court in appointing an administrator is conclusive of the necessity for administration, and cannot be collaterally attacked. *Stewart* v. *Smiley,* 46 Ark. 373."

In the Lambert case, *supra,* the administrator was allowed to recover possession of the personal property from the widow because the value of the estate was from $700 to $1,000. In the Bertig case, *supra,* as is there

pointed out, the widow, and not the administratrix, was authorized to sue because the value of that estate did not exceed $300. In neither case was it intimated, as it is in the majority opinion in the instant case, that it made no difference whether the suit was by the administratrix or by the widow. Both cases are to the contrary. Upon the authority of both these cases, the instant case should have been brought by the administratrix, as the value of the subject-matter of the litigation was $500, with five years' interest, and we do not know that this was all of the property of the estate.

There is a condition under which the heirs may sue, regardless of the value of the estate, and this situation is covered by § 1, Crawford & Moses' Digest, which reads as follows: "When all the heirs of any deceased intestate and all persons interested as distributees in the estate of such intestate are of full age, it shall be lawful for them to sue for, recover and collect all demands and property left by the intestate, and to manage, control and dispose of such estate without any administration being had thereon in all cases where the creditors of such estate consent or agree for them to do so, or where they have paid or satisfied all valid debts and demands against such intestate, or where such intestate was, at the time of his death, under no legal liability, either matured or incipient, to any person; and in every such case, after they have taken such control and management of the estate, no letter of administration shall be granted thereon, or, if granted, the same shall, on their application, be revoked."

The inapplicability of this statute is apparent when it is stated that there was no allegation or proof of the existence of the conditions precedent there made necessary for the heirs to sue under that statute. On the contrary, it affirmatively appears that the children of the intestate are minors, and that the plaintiff herself is their guardian,

This statute has been several times construed. In the case of *Business Men's Accident Association of America* v. *Green,* 147 Ark. 199, 227 S. W. 388, it was held (to quote a headnote in that case) that: "Under Crawford & Moses' Digest, § 1, authorizing action by adult heirs to collect the ancestor's property without administration in certain cases, a complaint by the sole heir of a decedent must allege, either that the creditors consented, or that all of decedent's debts have been paid, or that decedent was under no legal liability, either matured or incipient, to any person."

In holding that the heir as such had no right to maintain that suit, it was there further said: "The allegations of the complaint are not, however, sufficient to bring appellee within the terms of this statute, in that it is not alleged that the creditors of the estate consent or agree for appellee to maintain the action, or that appellee has 'paid or satisfied all valid debts and demands against such intestate, or where such intestate was, at the time of his death, under no legal liability, either matured or incipient, to any person.' This omission is fatal to appellee's right to maintain the suit, and the demurrer should therefore have been sustained. *Chisholm* v. *Crye,* 83 Ark. 495 [104 S. W. 167]."

This case of *Chisholm* v. *Crye, supra,* also construed § 1, Crawford & Moses' Digest, it being there referred to as § 15, Kirby's Digest, where it was said: "This statute contemplates that suit can be maintained by the heirs themselves for the collection of debts due their intestate when the heirs themselves and all persons interested as distributees of the estate are of full age, and when the intestate was at the time of his death under no legal liability. The usual rule of *ex pressio unius est exclusio alterius* applies here. The expression that it shall be lawful for the heirs to sue under the condition named excludes the idea that they may sue under conditions not named." See, also, *Madison County* v. *Nance,* 182 Ark. 775, 32 S. W. (2d) 1073.

I submit, therefore, that the widow and heirs as such had no capacity to sue.

It appears to me to be equally as certain that the second or amended complaint filed in the name of the administratrix is not a continuation of the original suit brought by the widow and heirs, but is an entirely different suit. The first suit was, as it expressly professed to be, a suit by the widow and heirs, and was, of course, for their benefit, and the recovery therein would have inured to their benefit and not to that of the estate. The amended complaint was a suit by the administratrix and was, of course, for the benefit of the estate, and, while the widow and heirs might have had an interest in the money there sought to be recovered, their interest was incidental and collateral and not direct and individual, as it was in their own suit. Their interest in money recovered in the second suit would have been worked out through the ordinary processes of administration with which we are all familiar, whereas, if they had recovered in the first suit, their recovery would have been independent of the administration.

If citation of authority for this proposition is required it may be found in the case of *McCustian* v. *Ramey*, 33 Ark. 141. In that case an administrator had paid to the heirs of Mills their distributive shares of the estate, and these payments were pleaded against the suit brought by Mills' administrator to recover the original debt. In disallowing credits for such payments the court said: "The heirs of Aaron Mills could not sue appellant for the money because they had no direct legal cause of action against him; nor could he legally discharge himself from liability to the administrator, when appointed, by paying the money to the heirs. After the claims of creditors are paid by the administrator, the heirs get the remainder of personal assets by distribution through the probate court, as provided by the statute."

While it is true that the recovery was sought in both complaints upon the same cause of action, the parties

sue in different capacities, and the statute of limitations should therefore be computed down to the time when a suit was brought by a person having capacity to sue, which in this case was the administratrix.

In the case of *Davis* v. *Chrisp,* 159 Ark. 335, 341, 252 S. W. 606, it was held that where there is an amendment stating a new cause of action or bringing in new parties interested in the controversy, the statute of limitations runs to the date of the amendment and operates as a bar when the statutory period of limitation has already expired as to such new cause of action or new parties, and a number of our cases were there cited to support that statement of the law.

We have a statute appearing in the chapter on "Limitation of Actions" (§ 6968, Crawford & Moses' Digest), which reads as follows: "If any person entitled to bring any action in the preceding provisions of this act specified die before the expiration of the time herein limited for the commencement of such suit, and such cause of action shall survive to his representatives, his executors or administrators may, after the expiration of such time, and within one year after such death, commence such suit, but not after that period."

This section has no application for the reason that the original suit was not brought for two years after the creditor's death, and more than three years had expired after his death before the amended complaint was filed. There appears a note to this section of the Digest which reads as follows: "When the statute commenced to run in creditor's lifetime, it did not stop upon his death until administration granted on his estate," and cases are there cited in support of that statement, to which numerous others might be added.

These cases and the statement of the law announced in them, just quoted, appear to me to be decisive of this case, and should compel the holding that the cause of action was barred when sued on by the administratrix more than six years after the cause of action had ac-

crued, there being no allegation which would arrest the running of the statute. The cause of action appears from the face of the second complaint to be barred, and there was no word of testimony to show that the bar of the statute had not fallen, except that a suit had been brought on the note before it was barred by persons having no capacity to sue. But the law is settled that in order for a prior suit to prevent the running of the statute of limitations against a subsequent suit it must appear that both suits are for the same cause of action and between the same parties. *McClellan* v. *State Bank,* 12 Ark. 141; *Crow* v. *State,* 23 Ark. 684, 693; *Gray* v. *Trapnall,* 23 Ark. 510; *State Bank* v. *Sherrill,* 12 Ark. 183; *Trapnall* v. *Burton,* 24 Ark. 371; *Warmack* v. *Askew,* 97 Ark. 19, 132 S. W. 1013; *Temple Cotton Oil Co.* v. *Davis,* 167 Ark. 448, 268 S. W. 38.

In this case, while both complaints declared upon the same cause of action, the parties were not the same, and the first suit did not, therefore, have the effect of tolling the statute of limitations against the second suit. Such cases as *St. Louis, I. M. & So. Ry. Co.* v. *Haist,* 71 Ark. 258, 72 S. W. 893, and *Arkansas Land & Lbr. Co.* v. *Davis,* 155 Ark. 541, 244 S. W. 730, are not to the contrary. In the first of these cases it was held that where a suit was brought by an infant by her foreign guardian, it was not error to permit her to substitute a resident as her next friend. This holding was upon the ground that there was no substitution of plaintiffs because the infant was the real and proper party in both the original and amended complaints, and the suit was hers and for her benefit, whether brought by a guardian or by a next friend.

The case of *Arkansas L. & L. Co.* v. *Davis, supra,* was one in which an action had been brought within the time limited by law against one as Director General of Railroads when he was not such, and subsequently the Director General was substituted as defendant, the date of the substitution being such that a new cause of action would have been barred. This substitution was per-

mitted upon the ground that the cause of action was against the United States, and the substitution of the correct name of the Director was merely to correct an error in the name of the representative of the United States.

The inapplicability of these and similar cases to facts such as those out of which the instant case arises is made very clear in the opinion in the case of *Irby* v. *Dowdy,* 139 Ark. 299, 213 S. W. 1039, where it was said: "Appellant insists that the court erred in refusing to permit him to substitute, in his place, as plaintiff, himself as guardian and next friend of his son, Herbert Irby, who was the real owner of the horse in question. Had the suit been instituted in the first place by any one as the next friend of Herbert Irby, it would have been within the discretion of the court to have substituted his natural guardian, or any other person as his next friend, for the next friend who had first brought the suit. *Wood* v. *Claiborne,* 82 Ark. 514, 82 S. W. 514; *Nashville Lumber Co.* v. *Barefield,* 93 Ark. 353, 124 S. W. 758. In the suit supposed, the infant would have been the real party in interest, and not the party who represented him, and the substitution of the natural guardian or another person as next friend would not have the effect of bringing a new cause of action. *Freeman* v. *Lazarus,* 61 Ark. 247, 32 S. W. 680; *St. Louis, I. M. & S. R. Co.* v. *Haist,* 71 Ark. 258, 72 S. W. 893; *Haydon* v. *Haydon,* 98 Ark. 480, 136 S. W. 631; *Buckley* v. *Collins,* 119 Ark. 231, 177 S. W. 920. While it is true that § 3757 of Kirby's Digest provides the natural guardian shall have the custody and care of minor children and their estates, it does not follow that they can maintain suits in their individual names for their children's property, for it is provided by § 6021 of Kirby's Digest that 'the action of an infant must be brought by his guardian or his next friend.' Unless the minor was included as a party plaintiff when the action was brought, his inclusion thereafter would amount to the institution of a new suit. This court

said, in the case of *State* v. *Rottaken*, 34 Ark. 144, quoting the fourth syllabus: 'Where a plaintiff shows in his complaint that he has no cause of action, the court cannot amend it by making other plaintiffs who have.' This rule of pleading was reaffirmed in the case of *Schiele* v. *Dillard,* 94 Ark. 277, 126 S. W. 835. In approving the rule, the court said: 'The appellant sought by amendment to their complaint to substitute new parties defendant. This could not be done. While the court may in its discretion allow additional parties plaintiff or defendant to be added or struck out, it cannot make an entire change of parties plaintiff or defendant. That would be tantamount to a new suit between entirely different parties'.''

It is my opinion, therefore, that this cause of action was barred when the amended complaint was filed making for the first time a party plaintiff who had the capacity to sue, and a verdict should therefore have been directed in favor of the defendant for that reason.

I am authorized to say that Mr. Justice HUMPHREYS concurs in the views here expressed.