O'NEAL *v.* WILLIAMS.

4-4904

Opinion delivered January 24, 1938.

440

*John P. Vesey,* for appellants.
*Carrigan & Monroe,* for appellees.

GRIFFIN SMITH, C. J.   On February 18, 1936, a special election was held in Hempstead county, under authority of act 108 of the Acts of 1935, for the purpose of determining whether intoxicating liquors should be sold in the county.   The certificate of the election commissioners showed that 896 votes were cast "for" such sales, while 887 votes were cast "against" the traffic.

Appellant and others, on March 4, 1936, filed suit in the county court and before the election commissioners, contesting the election.   It appears that the suit was subsequently treated as one to be determined by the county court.   No question is raised with respect to jurisdiction.

It is alleged in the complaint that illegal votes were cast in favor of legalizing the liquor traffic, and that at certain polling places election judges illegally interested themselves in the "wet" cause, the effect of such illegal activity being to impair the verity of the boxes in question and the attending certificates.

The original complaint listed 127 illegal votes, with the names of participants whose votes were challenged. In an amendment to the complaint, 45 additional names were listed as illegal voters, the allegations in the original complaint and in the amendment thereto being that such voters were either minors, or nonresidents of the precincts in which they had voted, or poll taxes had not been paid.

As to the McNab box it was alleged that, although all of the 24 votes were recorded as having been cast

"for" the traffic, five were cast "against" the traffic, and that the judges falsely changed the returns as to these five, recording them as part of the unanimous vote. Also, that five votes were cast by nonresidents of the precinct, and five were cast by persons who had not paid poll taxes. It is further alleged that in the Sardis box the judges corruptly conducted the election, and that 17 of the votes registered "for" were illegal, etc.

Finally, it is alleged that if the returns were purged of illegal votes, the result would show that the "dry" element prevailed by a substantial majority.

An answer to the complaint was filed by a sufficient number of voters who were designated as "contestees." There were general and specific denials of allegations of the complaint, coupled with the affirmative allegations that illegal votes were cast in opposition to the liquor traffic, and that even though it should be shown that contestants were entitled to the relief prayed for, the larger number of illegal votes cast in their behalf would not be offset by the number purged, and the result would still show a majority of the legal votes for the side represented by contestees.

The county court found in favor of contestants, and from this judgment an appeal to the circuit court was prayed and granted.

At the trial in the circuit court, upon a showing that the boxes containing the signed duplicates of ballots cast in six of the voting precincts had disappeared (including McNab and Sardis), there was a judgment reversing the county court, in which the following appears.

"The contestants admitting that the duplicate signed ballots cast in Hope box 5, Hope box 4, Patmos, Sardis, Deanyville and McNab, could not be found, but nevertheless resisting the motion of contestees [to dismiss] upon the ground that contestants could produce the original unsigned ballots cast in said election in the above boxes, and resisting said motion to dismiss upon the further ground that contestants had other evidence to sustain their allegations contained in their petition contesting said election, the court, without hearing any tes-

timony, dismissed the contest of election and the petition of contestants.''

Three questions are raised by this appeal: (1) Did the trial court hold that fraud or mistake in an election held under authority of act 123 of 1935 could only be shown by the signed duplicate ballots? (2) If the judgment of the court is based upon such a finding, was error committed? (3) Was the offer of contestants to produce other evidence, without specifying the nature of such evidence, so vague and uncertain as to justify the court in dismissing the complaint without hearing testimony and, in effect, holding that the duplicate ballots were the only evidence admissible?

Section 16 of act 123 provides that ''In all elections in Arkansas duplicate ballot boxes shall be used. The duplicate ballot of each voter, after being numbered with the same number placed on the original ballot, shall be deposited in a duplicate ballot box which shall be sealed with a standard make of numbered seal by the person who delivers the election supplies to the election officers. A record shall be made of the number upon each seal showing to which precinct the box bearing said number is delivered. Said record shall be signed by the person sealing the ballot boxes and verified by him and filed with the county clerk as a permanent record. The duplicate ballot boxes shall in no event be opened unless by order of a court of competent jurisdiction made in an election contest or by a grand jury in connection with its inquisitorial duties or by direction of a prosecuting attorney in the prosecution of a person for violating any of the election laws. Said duplicate boxes shall be delivered to the county treasurer who shall safely keep said ballot boxes under the same penalties prescribed herein for failure of the county clerk to safely keep the returns received by him. . . . The judges and clerks shall use a register, or list of voters, as now provided by law, but no number on said register shall be given to the voter, nor shall any number appear on the original ballot, by which it shall be possible to identify the voter, and all laws or parts of laws now requiring such numbers in elections, are hereby repealed.''

The judgment, after reciting that contestants admitted the duplicate signed ballots could not be produced, and that other evidence was offered, concludes with the expression: "Whereupon, the court, without hearing any testimony, dismissed the contest."

Ordinarily, in the absence of a showing that the evidence offered and rejected was competent, there would be a presumption that it was incompetent. But, in the instant case, this presumption is at least inferentially negatived by a recitation in the judgment that the contestants had admitted the duplicate ballots could not be found. This recitation is followed by the words, "but nevertheless," etc. Expressed differently, the court seems to have said that the contestants, after admitting their inability to produce the duplicates, yet still insisting that a hearing be had, resisted the motion to dismiss, offering to produce the original ballots, and other proof. The court, without hearing any testimony, and without specifically ruling that the original ballots could not be used, or that the additional evidence was incompetent, sustained the motion to dismiss.

In *LaFargue* v. *Waggoner,* 189 Ark. 757, at pages 768-769, 75 S. W. 2d 235, quoting with approval 20 C. J. 235, it was said: "Since such [election] contest is generally held not to be a civil action, subject to rules of pleading in actions at law, but to be a special statutory proceedings, varying in its nature as well as in the sufficiency of the pleadings, according to the statutes of the different states, the same strict, technical accuracy in pleading is not required as in civil actions *inter partes.*"

In *Freeman* v. *Lazarus,* 61 Ark. 247, 32 S. W. 680, Judge RIDDICK quoted from McCray on Elections, § 539, the following: "There is a difference between fraud committed by officers, or with their knowledge and connivance, and a fraud committed by other persons, in this: the former is ordinarily fatal to the return, while the latter is not fatal, unless it appears that it rendered doubtful or changed the result. If an officer is detected in a wilful and deliberate fraud upon the ballot box, the

better opinion is that this will destroy the integrity of his official acts, even though the fraud discovered is not of itself sufficient to affect the result. The reason of the rule is that an officer who betrays his trust in one instance is shown to be capable of defrauding the electors, and his certificate is good for nothing.'' This declaration of, a principle generally accepted was quoted with approval by this court in *Sims* v. *Holmes,* 191 Ark. 1033, 88 S. W. 2d 1012.

The record shows that the complaint contained specific allegations of frauds committed by officers of the election.

We are of the opinion that even a liberal construction of the judgment shows that the court held that under act 123 of 1935 secondary evidence is not admissible in an election contest. This is the argument advanced by counsel for contestees, who say: ''The legislative intent, to be gathered from the act, as well as the plain express terms of the act, makes the signed duplicate ballots the only evidence to be relied on in a case of contest. The duplicate ballot is the signed deposition of the individual voter and constitutes not only the evidence of his vote and how he voted, but is conclusive evidence on the question.''

It might well be argued that if the issue were one initiated by the individual voter who sought to question his own ballot, and such ballot, without mutilation or spoliation, should be produced, the voter would not be heard to dispute the original record.

But the situation as presented by the contest before us is quite different. It is true, as appellees urge, that act 123 contemplates a secret ballot. Protection is given against the prying eyes of an election officer who might become officiously interested in the elector's manner of exercising the right of franchise. However, the act itself contemplates possible publicity, under proper judicial supervision, for ''The duplicate ballot boxes shall in no event be opened unless by order of a court of competent jurisdiction made in an election contest, or by a grand jury in connection with its inquisitorial duties. or

by direction of a prosecuting attorney in the prosecution of a person for violation of any of the election laws.''

The language just quoted is a recognition that the public's right to fair elections is paramount to the voter's right of secrecy—the latter being only conditional.

We hold, therefore, that secondary evidence is admissible, in view of allegations of the complaint; that charges of fraud perpetrated by officers of the election were sufficiently alleged to require a hearing, irrespective of existence or nonexistence of ballot boxes from the precincts in question; that on remand the hearing should not be confined to the vote cast in precincts affected by the missing ballot boxes, but should extend to all precincts as to which charges of fraud and irregularity have been alleged in the original complaint, the amended complaint, or the answer; and that there be a full and complete determination of all issues presented by the pleadings.

The judgment is reversed, and the cause remanded with directions to proceed in a manner not inconsistent with this opinion.