Powell v. Holman.

## POWELL V. HOLMAN.

| | |
|---|---|
| 50 | 85 |
| 53 | 166 |
| 50 | 85 |
| 55 | 85 |
| 50 | 85 |
| e73 | 190 |
| 73 | 192 |
| 73 | 193 |

1. ELECTIONS: *Contesting result: Ballots as evidence.*

Where the ballots cast at an election are not safely kept by the proper legal custodian, and are so exposed as to give an opportunity for tampering with them, they cannot be relied on in a contest as to the result of the election.

2. SAME: *Same: Finding and judgment discrediting ballots.*

On the trial of an election contest, it was specially found by the court, that after the ballots were counted they were deposited for the night in a hall used by several civic orders and clubs, where they were locked in a wardrobe but were left unguarded; and that after the vote had been canvassed and abstracted by the clerk on the next day, the ballots were placed in a room which was an exposed and unsafe place, affording opportunity for tampering with them and remained there for a week. *Held:* That on these findings the general conclusion and judgment pronounced by the trial court, that the ballots were unworthy of credit as evidence in the cause, was correct.

3. SAME: *Same: Official returns as evidence: Burden of proof.*

The official returns of an election are *quasi* records and must stand as evidence establishing the result of the vote, until they are impeached and overcome by affirmative proof that they do not speak the truth. In an election contest the burden of proof is upon the party who seeks to set aside the returns and they cannot be invalidated by merely showing that the ballots after being counted have been so exposed to the public as to be unworthy of credit.

4. SAME: *Same: Inconsistency of general and special findings.*

On the trial of a contest as to the result of an election, the court after making certain special findings of fact, sufficient to discredit the ballots as evidence in the cause, and also such other findings as showed that the official returns were properly authenticated and were valid and unimpeached, pronounced as a general conclusion that "the court finds that said ballots are unworthy of credit as evidence in this cause and sets aside * * * the whole of the returns of said election" and thereupon gave judgment against the defendant who was commissioned on the official certificate based on such returns. *Held:* That the conclusion or general finding of the court is inconsistent with its special findings of fact; that the latter should prevail over the former and that judgment on the special findings should have been given for the defendant.

5. PRACTICE IN SUPREME COURT: *On reversal of judgment for inconsistency with special findings.*

Where a judgment is reversed as being inconsistent with the trial court's special findings of fact, the cause will be remanded with instruction to enter a judgment according to the special findings.

APPEAL from *Hempstead* Circuit Court.

C. E. MITCHEL, Judge.

*Compton & Compton* for appellant, with whom are *A. B. & R. B. Williams* and *J. D. Conway.*

1. The ballots were inadmissible to impeach the official returns. Opportunity had been offered for tampering with

them, by leaving them in' an exposed place. *McCrary on Elections, secs.* 277–8, 278 *a,* 555.

2.   Evidence to show by the electors, that no such ballots had ever been cast by them was admissible. *McCrary on Elections, secs.* 386, 388, 555.

3.   It did not follow that because the ballots had been tampered with and were worthless as evidence, that the poll books and official returns were also worthless. No fraud, unfairness, or error was shown in the counting of the votes for sheriff. The poll books were not impeached, but were shown to be correct, and the vote as certified should have been counted.

4.   This court, under *secs.* 1313 *and* 1314 *Mansf. Dig.,* should reverse the judgment and enter final judgment here for Powell, or certify and order it to be carried into effect by the court below.   47 *Ark.,* 459.   Cases of this character are to be tried in a summary way and without a jury.   *Mansf. Dig., sec.* 2723; 32 *Ark.,* 553; 41 *Ark.,* 111.

*Jones & Martin,* for appellee.

The record taken as an entirety, discloses such a state of facts as shows that the ballots were not impeached, and they are the best evidence. *McCrary on Elections, sec.* 291; 28 *Cal.,* 123; *Acts* 1874–5, *secs.* 45–6–7, *p.* 100; 19 *Ohio St.,* 306.

The ballot is a writing and cannot be explained or contradicted by parol evidence.   4 *Wisc.,* 450;  22 *N. Y.,* 310.

The presumption is that the judges and clerk did their duty in preserving the integrity of the ballots.   28 *Cal.,* 123; *Brightley Elec. Cases,* 485.

In a contest the real and only question is, who received the larger number of votes legally cast.   32 *Ark.,* 561.

The judges ignored the plain provisions of *Mansf. Dig.*, *sec.* 2690, and from this and other facts the court found that the *integrity of the retnrns* was destroyed. 32 *Ark.*, 360.

If the judgment should be reversed, it would be unjust and arbitrary to enter final judgment here, and there is no precedent for such an order.

SANDERS, Special Judge. At the general state election, held on the 6th day of September, 1886, W. P. Powell and H. B. Holman were opposing candidates for the office of Sheriff of Hempstead county.

The clerk's certificate of election was awarded to Powell as a result of the abstract of the vote made in compliance with law from the authenticated returns of the election officers, and a commission was duly issued to him as sheriff, by the Governor of the State.

On the 22d day of September, 1886, the appellee, H. B. Holman, caused a notice of contest to be served on the appellant, Powell, citing him to appear at the October term, 1886, of the Hempstead county court, to defend his contestation and claim to said office.

The record brought to this court discloses a trial in the county court, which lasted for a week or more and which resulted in a judgment in favor of Holman, the contestant, and by which it was adjudged that the said contestant was duly elected and legally entitled to the office of sheriff of Hempstead county, and the clerk of said court was directed to transmit to the Governor of the state a certified copy of said order and judgment.

From this judgment Powell appealed, in proper form, to the circuit court of Hempstead county, and on a trial anew before that court, judgment was again rendered in favor of the contestant for the office of sheriff. Powell moved the court for a new trial, which was refused, saved

all proper exceptions of record, presented and filed his bill of exceptions and appealed to this court.

The specifications of contest under the statute must set out in detail the grounds of the contest, and when properly served by copy, and the original returned into court, operates as a complaint upon which the trial is had.   The specifications of contest as set out in the record, although concise and tersely drawn, are necessarily long and exhibit much subject matter which so far as appears from the bill of exceptions, did not come before the trial court for consideration.   It will be sufficiently comprehensive of all the questions involved on appeal, to set out the fifth, sixth and seventh paragraphs of the specifications of contest, which are as follows :

" *Fifth*, That at the election held at said precinct, No. 2, in said DeRoane township, the majority of the votes cast for said office of sheriff were cast for me, but were counted, computed and returned by the judges and clerks of the election for you.

" *Sixth*, That at the election held at said precinct No. 2, in said DeRoane township, a large number of the votes cast for said office of sheriff, to wit: one hundred and fifty votes, which were cast for me, were illegally counted, computed and returned by the judges and clerks of the election for you.

" *Seventh*, That at the election held at said precinct No. 2, in DeRoane township, of the five hundred and sixty-one votes cast, three hundred and forty-two thereof were cast for me for said office of sheriff, but one hundred and fifty of the votes so cast for me were illegally counted, computed and returned by the judges and clerks of election as having been cast for you; and that the county clerk and his associates, constituting the canvassing board of said county to open and compare the elec-

tion returns and make abstracts of the votes given for the several candidates for each office, did consider and act upon said returns from said precinct No. 2, in De-Roane township, as being true and made in accordance with law ; and that said clerk did deposit the abstracts of said election in the post office, directed to the Secretary of State, and did issue to you a certificate of election in accordance with said returns. Whereas, in truth and in fact, said returns from said precinct No. 2 were fraudulent and void, and said certificate of election should have been issued to me, as the duly and legally elected sheriff of Hempstead county, and not to you."

The subject matter, set out in these three paragraphs, constitute the basis of contest, and the vote in DeRoane township No. 2 was evidently conclusive of the rights and claims of the respective parties to the office. No evidence was taken before the circuit court, or findings of fact, based upon any of the other specifications in the notice of contest. We shall, therefore, confine our considerations to the record facts bearing upon the findings of the court, and the judgment thereon, with reference to the vote in this township.

It is needless to restate, either in detail or in substance, the evidence as shown by the bill of exceptions. The trial court, after hearing all the testimony detailed by the witnesses in person, made the following finding of facts :

" The court finds that George W. Meek, P. C. Frederick and John M. Garner were the judges, and that George M. Ellis and B. E. Green were the clerks of the election held at DeRoane precinct No. 2, in Hempstead county, on the 6th day of September, 1886, and that the votes were received in the usual way by Meek and were numbered by Frederick and then placed in the box by

Gardner. After the polls were closed, that Meek called most of the time the names from the ballots, and while he called Frederick took from him the ballots so called for examination and then passed them to Garner, who placed them in a paper sack provided for that purpose. Ellls and Green kept the tally sheets. And the court finds that it frequently occurred that their lists did not agree, and when this was made known they, as clerks, submitted the matter to the judges, as to what should be done, and that the judges decided that the hindmost list should be tallied to correspond with the foremost list, but that these discrepancies did not exist as to the vote for sheriff. And the court finds that at the conclusion of the count, which was about midnight of the Tuesday following the election, that the clerks counted their tally sheets and announced the result of the votes as to the office of sheriff, and that the bystanders and election officers then dispersed for the night, with the understanding that the election officers were to meet at the polling place next morning and complete the returns. Ellis, the clerk, took the ballots in a sack, unsealed, and the poll books and tally sheets, and put them in a wardrobe in the Odd Fellows' Hall, under a combination lock. In this Hall the Knights of Honor, Odd Fellows, Knights of Labor and the Democratic Club held their meetings. No one remained with the election returns, and the next morning Ellis gets the returns from this place and returns them to the polling place, and places them on a shelf. The clerks then complete the task of casting the vote and entering the result ascertained in the poll books, the judges attest the poll books, and the ballots, so returned by Ellis, are by Meek and Frederick, two of the judges, placed in a paper sack, sealed, and delivered with the poll book and tally sheet to P. G. Frederick, to be by him de-

Powell v. Holman.

livered to the county clerk. And the court finds that Mr. Frederick so delivered the returns thus made up. And the court further finds that H. J. Trimble, the county clerk, received the returns and placed them in the vault in the county clerk's office, where they remained until the vote was abstracted by said clerk, when said ballots were put in a room, called the library to the said clerk's office, and the place where such ballots have usually been kept, and that said ballots remained in said library for a week or more, and while there the court finds that access to them could easily have been had through the insecure fastenings of said office ; and from the facts so above found, the court finds that said ballots are unworthy of credit, as evidence, in this cause, and sets aside and holds for naught the whole of the returns for said election from said precinct."

Upon the findings of fact, thus made and ascertained, the trial court proceeded to pronounce the judgment of law thereon, and the only question necessary for this court to determine is, was the judgment of the Hempstead circuit court based upon the findings of fact as shown by the record, the logical and legal sequence of these facts? If it be that the trial court found a certain and definite state of facts to exist, as established by the evidence, and drew therefrom a conclusion and general finding inconsistent therewith, then it would be equivalent to special findings by a jury, and a general verdict inconsistent therewith.

Under such circumstances, the rule of law would be, that the special findings should prevail over the general verdict. This question was thoroughly considered and a satisfactory conclusion reached by this court in *L. R. & F. S. Ry. v. Miles,* 40 *Ark.,* 298.

Again, in *Smith v. Hollis*, 46th *Ark.*, 17, this court, in considering the special findings of fact made by the trial court, while sitting as a jury, and a general finding and judgment of law inconsistent therewith, said :

" The only question, then, raised by the appeal is, Does the judgment pursue the special findings; that is, conceding the facts to have been correctly found, does the legal consequence, deduced by the court, follow ? " And after a review of the special findings, in connection with the judgment pronounced thereon by the trial court, the case was reversed with directions to enter judgment in the court below, for the plaintiff, upon the speeial findings. See also authorities cited in *L. R. & F. S. Ry. v. Miles, supra.*

We shall therefore proceed to ascertain, first, what were the special findings of the court below, with reference to the vote in DeRoane township No. 2. An analysis and abstract of these special findings would be substantially as follows :

1. The court finds that the election was held by three judges and two clerks, the officers designated by law for holding elections, and that the votes were received and deposited in the ballot box in the usual way.

2. That in the counting of the votes, the tally sheets of the clerks, frequently did not agree, and that by order of the judges of the election sufficient names were added to the hindmost to make them correspond, *but that these discrepancies did not exist as to the vote for sheriff.*

3. That the count of ballots was concluded about midnight of Tuesday, following the election ; that the clerks counted their tally sheets, announced the vote for sheriff, and the election officers then dispersed for the night, *with the understanding that they should meet next morning, at the voting place, and complete the returns.*

4. That one of the clerks took the ballots in a sack, unsealed, and the poll books and tally sheets, and placed them in the Odd Fellows' Hall, in a wardrobe secured with a combination lock, and that several different civic orders and clubs, at times, used the hall for their meetings.

5. That no one remained as watch over the ballots, poll books and tally sheets during the rest of the night, and that on the next morning the ballots, poll books and tally sheets were returned by the clerk to the voting place, *and the clerks then completed the casting up of the votes and entered the result in the poll books; and the judges attested the poll books, sealed the ballots, and delivered the ballots, poll books and tally sheets to one of the judges, who, on the same day, delivered them, in the same condition, to the clerk of the county.*

6. That after the vote had been canvassed and abstracted by the clerk, as required by law, the ballots were placed for about one week in a library room, adjoining the clerk's office; and that this was an unsafe and exposed place, which afforded opportunity for them to be tampered with.

These constitute and fairly set out the special findings of fact made by the trial court. Thereupon, the court proceeded to pronounce, as a general conclusion, that: " From the facts as above found, the court finds that said ballots are unworthy of credit as evidence in this cause, and sets aside and holds for naught the whole of the returns for said election from said precinct."

The question therefore presents itself in form of law : Is this the judgment and legal conclusion which the law pronounces as the result of such a state of facts as is shown by the special findings ?

1. ELEC-
TION CON-
TESTS:
Ballots as
evidence.

Unquestionably, the judgment and conclusion of the trial court was correct, as to the impeached and discredited condition of the ballots. The authorities are abundant, that where ballots have been so exposed as to have afforded opportunity to be tampered with, and have not been guarded with that jealous care which will contravene all suspicion of substitution or change, then they lose their presumptive purity, and are no longer to be relied on as evidence in a contest or judicial inquiry as to the result of the election.

McCrary, in his work on Elections, p. 249, says: " Before the ballots should be allowed in evidence to overturn the official count and return, it should appear *affirmatively* that they have been safely kept by the proper custodian of the law—that they have not been exposed to the public, or handled by unauthorized persons, and that no opportunity has been given for tampering with them." See also *Cooley Con. Lim., p.* 625, and authorities there cited.

2. SAME:
Same.
Finding
and judg-
ment dis-
crediting
ballots.

We, therefore, think that the trial court was correct, when, upon the special findings with reference to the ballots, it pronounced the judgment of the court and the law to be, that they were unworthy of credit as evidence in the case. But the special findings of the court below did not show that the official returns as to the vote for sheriff, were irregular or in any manner illegal, doubtful or even suspicious; but, to the contrary, all the special findings show that the official returns, as to the office of sheriff, from this township, were properly authenticated, valid and unimpeached. Because, forsooth, the ballots were unworthy of credit, this did not invalidate or set aside the returns of the election officers. The duly certified official returns of election officers are not subject to the same rules of suspicious reflections and doubtful imputations as attend the ballots under certain circum-

Powell v. Holman.

stances.   The official returns are quasi records and stand with all the force of presumptive regularity, and *prima facie* integrity, not only till suspicion is cast upon them, but until their self-authenticated verity is overcome by affirmative proof that they do not speak the truth. *McCrary on Elections*, secs. 438, 440; *Calaveras Co. v. Brockaway*, 30 *Cal.*, 325; *Marshall v. Kerns*, 2 *Swan*, 68; *Morgan v. Quackenbush*, 22 *Barb.* 72.

3. SAME: Official returns as evidence: Burden of proof.

These returns may be impeached by any legitimate evidence, showing that they do not speak the truth, and when so overcome, they lose their character as evidence, and thereupon, other sources must be looked to for testimony in ascertaining and establishing the result of the vote.

Had it been shown by the appellee, that fraud, unfairness or illegal voting attended the election, entered into and became a part of the official count, and thus involved the correctness of the certified returns; or that the vote, as announced by the election officers for sheriff, on Tuesday night, was different from the vote as enumerated and announced the next morning, and as certified to and returned by the judges to the clerk of the county; or that changes had been made in the poll books or tally sheets, after the entry of the votes, and before the final casting up and certification on Wednesday morning; or that, subsequent to the delivery of the returns to the clerk, erasures, interlineations or alterations of any kind, had been made; or any other legitimate proof, tending to impeach the verity of the returns so placed in evidence, then the trial court might have found specially, that the presumption of credit and *prima facie* truthfulness which the law gives to the official acts and returns of election officers, had been overcome.    But the burden to present such proof was on the party seeking to set aside the re-

turns, and not only do the special findings of the trial court sustain and establish the integrity of the returns as to the vote for sheriff in DeRoane township No. 2, but the bill of exceptions fails to disclose any evidence which, to our minds, would tend to show any fraud, invalidity, or want of truth in the returns as introduced in evidence in this case.

Counsel for appellee, in their very able brief in this case, insist that the returns from this township were discredited, and should not have been received in evidence because the proof showed that the election officers dispersed on Tuesday night, without placing all of the poll books under cover and sealing the same as required by sec. 2690 *of Mansfield's Digest.*

The court specially found that the canvass, enumeration and certification, contemplated by this and the two preceding sections of the Digest, were not completed until the next day morning when the election officers reassembled at the voting place; and that when the requirements of the sections of the Digest above named, had been complied with, the ballots, poll books and tally sheets were delivered in the same condition, to the clerk of the county.

**4. SAME:** Inconsistency of general and special findings.      We must therefore hold that the special findings made by the trial court, as set out in the record, are conclusive as to the issues of fact, and that the general conclusion and judgment of the court in setting aside the returns from this township, is inconsistent with the special findings of fact made by the said court; and that the special findings must prevail over the general conclusion, and that the judgment, which should have been pronounced by law upon these special findings, should have been for the appellant, William P. Powell.

Counsel for appellant, in their brief, argue, that if this court should reverse the judgment of the lower court, that final judgment should be entered and carried into effect from this court.

5. PRAC-
TICE IN
SUPREME
COURT:
On rever-
sal of judg-
ment for
inconsis-
tence with
special find-
ings.

The effect of special findings by the trial court, or by a jury, inconsistent with the general verdict, or findings and judgment of the court, was considered in *L. R. & F. S. Ry. Co. v. Miles*, 40 *Ark.*, 298, and in *Smith v. Hollis*, 46 *Ark.*, 17, and the proper practice was there determined to be, to remand the case with instructions to enter judgment in the court below according to the special findings.

The judgment of the Hempstead circuit court is therefore reversed, and the cause is remanded with instructions to enter a judgment in said court in favor of the appellant, Powell, in accordance with the special findings made on the former trial, and not inconsistent with the law and the opinion of this court.

BATTLE, J., did not sit in this case.