SCHUMAN *v.* SANDERSON.

Opinion delivered December 3, 1904.

1. ELECTION CONTESTS—CONCLUSIVENESS OF COURT'S FINDINGS—In election contests the findings of the trial judge upon conflicting evidence are as conclusive as the verdict of a jury, notwithstanding all the evidence is in writing. (Page 189.)

2. ELECTION PRECINCTS—CHANGES IN BOUNDARIES.—Where no notice was given to one of the election commissioners of the time, place and object of a meeting of the board, a change of the boundary lines of a precinct, made in his absence by the other two commissioners, is void. (Page 192.)

3. WITNESS—CREDIBILITY.—Where a witness is shown to have willfully sworn falsely in one instance, the circuit judge will not be reversed for applying to his testimony the maxim, *"Falsus in uno, falsus in omnibus."* (Page 192.).

4. SECRECY OF BALLOT—WAIVER.—The returns from an election precinct will not be thrown out because voters were allowed to cast open ballots, as the secrecy of the ballot is a personal privilege which the voter may waive if it is his wish. (Page 192.)

5. ELECTIONS—CONCLUSIVENESS OF RETURNS.—The official returns of an election are *quasi* records, and stand until overcome by affirmative evidence against their integrity. (Page 193.)

6. SAME—FRAUD.—The frauds of individual voters and the casting of unqualified and fradulent votes do not vitiate election returns unless the officers are parties thereto; otherwise the returns are accepted after being purged of the illegal votes. (Page 194.)

Appeal from Little River Circuit Court.

CHAS. W. SMITH, Judge, on exchange of circuits.

Affirmed. ·

*Webber & Webber, Scott & Head,* and *Dan W. Jones,* for appellants.

The evidence does not support the judgment. Amendment No. 2 to the Constitution, fixing the qualifications of voters, does not make a poll tax receipt the sole evidence of payment of said tax, but allows such fact to be established by "other evidence." See Act Jan. 12, 1893. *Cf.* Act April 10, 1893; Sand. & H. Dig. § § 2605-12 as amended March 18, 1895. As to manner of casting ballots and conducting elections, see Sand. & H. Dig. § § 2650, 2652. These provisions are mandatory. 61 Ark. 247, 254-5; 68 Ark. 555; 69 Ark. 501. "Inhabitant" is synonymous with "resident." 70 Ark. 545-548; McCrary, Elect. § 199. The "incompetency, inefficiency and reckless disregard of the essential requirements of the law" by the election judges vitiate the election. McCrary, Elect. § 199; 41 Ark. 11. The court erred in holding that the election held by Moore in Winthrop precinct was the legal election. Sand. & H. Dig. § § 2624, 2626, 2622. The return of the ballots to the county election

commissioners for safe keeping, etc., was regular and proper. *Cf.* Sand. & H. Dig. § § 2660-2671, 947, 949; 32 Ark. 553, 560; 53 N. W. 944; 60 N. W. 676.

*J. T. Cowling, W. H. Arnold, John N. Cook* and *L. A. Byrne,* for appellees.

When the record is incomplete, a presumption of sufficiency of the evidence attaches. 54 Ark. 160; 44 Ark. 76; 38 Ark. 102; 53 Ark. 254; s. c. 43 S. W. 422. Two commissioners could not act without the presence of or notice to all. 52 Ark. 511; 54 Ark. 58. The order changing Red River Precinct No. 2 polling place was never legally passed. Sand. & H. Dig. § § 2678-9. The payments of poll taxes by Orton were not illegal. 68 Ark. 558. The Richlands box was properly rejected. 10 Am. & Eng. Enc. Law (2d Ed.), 774; 61 Ark. 247; 53 Ark. 161; 41 Ark. 111. There is no showing made upon which the Ashdown boxes should have been rejected. McCrary, Elect. 523; 10 Am. & Eng. Enc. Law (2d Ed.), 774. As to poll taxes paid by Orton, see 68 Ark. 555; 69 Ark. 501.

HILL, C. J. On the 3d of September, 1901, a majority of the electors of Little River County voted in favor of a removal of the county seat from Richmond, and, no place having received the requisite votes, another election was ordered for December 3, 1901, to settle whether Rocky Comfort (now called Foreman) or Ashdown should be the county seat. On the face of the returns Rocky Comfort received a majority, and a contest was instituted by citizens representing Ashdown. The judgment of the county court was in favor of Rocky Comfort, and an appeal was taken to the circuit court, where the case was tried *de novo*. The case was heard by the circuit judge on the evidence, which was very voluminous, and consisted entirely of depositions, with the exception of two or three witnesses who orally testified before the judge. The result of the hearing before the circuit judge was a judgment declaring Ashdown had carried by 138 majority.

.1. The first question for consideration is the effect to be given to the findings of fact by the circuit judge.

In *Davis* v. *Moore,* 70 Ark. 240, this court held that section 2698, Sandels & Hill's Digest, providing that in election contests

the evidence is to be taken on depositions, and the court shall determine the same as a summary proceeding, is mandatory, and costs incurred in a trial otherwise are not taxable.

It is insisted by appellants, as the hearing in these cases is upon depositions, and not with the witnesses personally present before the court, that the rule in chancery cases where the law contemplates all trials shall be had on depositions should prevail, instead of the rule giving to the finding of a circuit judge the same conclusiveness as the verdict of a jury. It is earnestly urged that the reason for the rule giving conclusive effect to the finding of a circuit judge or jury on a disputed question of fact ceases to apply in these special proceedings heard on depositions, and that therefore the rule should cease, and that the finding of the circuit judge should have only persuasive effect on this appeal.

The statute referred to, which was construed in *Davis* v. *Moore, supra,* has been the law since 1875, long before *Powell* v. *Holman,* 50 Ark. 85, and *Jones* v. *Glidewell,* 53 Ark. 161, were decided. In *Powell* v. *Holman* the court held that the circuit judge's findings of fact in a contested election case had the effect of special findings of a jury. In the case of *Jones* v. *Glidewell,* Chief Justice Cockrill, speaking for this court, said: "It is not the practice of appellate tribunals, and has never been the practice of this court, to enter anew into the investigation of issues of fact which have been tried in a law case by a circuit judge upon conflicting testimony. When a jury is waived by the parties, and the issues of fact are tried before the judge, his findings of fact are as conclusive on appeal as the verdict of a jury; and when the law makes the judge the trier of facts in cases to which the constitutional right of trial by jury does not extend, the same presumption attends his findings. *Corley* v. *State,* 50 Ark. 308. The reasons which sustain the rule in the one case exist as well in the other. The statute has not established a different rule for election cases, and there is nothing in the policy of the law to warrant the courts in doing so. On the contrary, the rule was followed in *Powell* v. *Holman,* 50 Ark. 85, and in *Wheat* v. *Smith,* 50 Ark. 275; and in *Patton* v. *Coates,* 41 Ark. 111, the cause was remanded to the circuit court for a new trial, whereas, if the court were at liberty to review the facts as in an equity case, judgment would have been entered here in accordance with this court's conclusion upon the facts. But, while we will not

enter upon an investigation to ascertain where the weight or preponderance of the testimony lies, it is our province to determine whether a given finding or verdict has testimony to sustain it; and where there is no conflict in the evidence, or the facts are specially found, the conclusion of law or judgment to be deduced therefrom is purely a question of law to be finally determined by this court." In *Freeman* v. *Lazarus,* 61 Ark. 247, this court said: "As there was evidence to support the finding of the circuit court that the judges of the election in Bragg township were guilty of fraud, that finding must stand. *Jones* v. *Glidewell,* 53 Ark. 174."

Thus it is seen that by authority and practice it is thoroughly imbedded in the jurisprudence of this State that in election contests the same effect must be given the findings of the judge as to the findings of a jury on conflicting evidence.

The fact that the evidence is written, instead of given personally before the judge, has never controlled the rule in law cases, and it has been extended even to a written agreed statement of facts. *Marshall* v. *Dossett,* 57 Ark. 93; *Robson* v. *Tomlinson,* 54 Ark. 481. In chancery cases it has been frequently said that, as the appellate court has the same record before it in the same form of evidence that the chancellor had, no reason existed why his decisions should have more than a persuasive weight. *Kelly* v. *Carter,* 55 Ark. 112; *Chapman* v. *Liggett,* 41 Ark. 294. This is one reason—and a sufficient one—for holding in chancery cases that there is no conclusiveness in the chancellor's finding; but the deeper reason is that in chancery cases the trial here is *de novo,* while in law cases it is only a trial here to ascertain if error has been committed.

These questions for review from law courts are only questions of law, and they must be raised and ruled on in the trial court before review here. There is no trial *de novo* in such cases, as in chancery appeals. The only question presented in appeals in law cases on the facts is whether the evidence is legally sufficient to sustain the verdict or finding. Therefore the inquiry in this case is merely whether there is in each instance evidence legally sufficient to sustain the finding, and the finding must be sustained if there is such evidence, notwithstanding a decided preponderance may be against it.

The declarations of law made by the court are in full accord with the decisions of this court in the following election contest cases, viz: *Patton* v. *Coates,* 41 Ark. 111; *Powell* v. *Holman,* 50 Ark. 85; *Jones* v. *Glidewell,* 53 Ark. 161; *Freeman* v. *Lazarus,* 61 Ark. 247; *Whittaker* v. *Watson,* 68 Ark. 555; and *Rhodes* v. *Driver,* 69 Ark. 501.

Therefore it is made certain that in weighing the evidence the circuit judge had a full appreciation of the rules controlling each proposition involved.

2. The return from Sanderson School House in Red River Township is attacked on the ground that the precinct lines had been changed by the election commissioners, and the judges at that precinct disregarded the changes and permitted votes to be cast therein which legally should have been cast in other precincts. There was a conflict in the evidence as to whether the change was made by the board or by two members of it; and the court found the fact to be that it was done in the absence of one of the commissioners without notice to him of the meeting, its time, place and object. It followed that the change was void. and the judges did right in disregarding it.

3. At Rocky Comfort 1,017 votes were returned, all for Rocky Comfort. The court found this return fraudulent. It seemed to have been conceded, and evidence was taken to prove the legal vote there. . The appellants only claim here that they were entitled to 301 votes, and the circuit judge gave them 275, and error is assigned in not awarding 26 more to Rocky Comfort. The evidence upon which most of these votes was proved was from one of the election judges, and as to one vote of this number so proved by him there was a flat and positive refutation of his evidence *in toto.* In view of the manner this judge and the others there conducted that box, the court cannot reverse the circuit judge for applying to his testimony the old maxim, *"Falsus in uno, falsus in omnibus."* . There was some evidence justifying the rejection of the others.

4. A sweeping attack is made on the returns from six townships, containing 800 votes for Ashdown, after purging from them many illegal votes. The attack on these townships is made with a vast amount of evidence. The appellees stood upon the returns from these precincts, and did not attempt to prove the individual vote cast therein, as appellants did at Rocky Comfort

and other precincts. It is insisted that the evidence establishes such gross irregularities and violations of the statutory requirements by the election officers that fraud is proved against them, and that the returns must be rejected *in toto.* The officers of these precincts explained their conduct in detail, and were rigidly cross-examined, and the circuit judge has painstakingly sifted the evidence, and found that there was no fraud committed by the judges at any of these precincts. The principal attack was that there was an open ballot cast at Ashdown and others of those precincts, instead of a secret ballot. The circuit judge finds from the testimony of the judges and clerks and voters that each voter cast his own ballot; that when the judge prepared a ballot, it was prepared as the voter desired, although not always as the statute directs. In *Jones* v. *Glidewell,* 53 Ark. 161, the court said: "The secrecy of the ballot is a personal privilege which the voter may waive if it is his wish, but of which he cannot be lawfully deprived."

The evidence which comes accredited from the circuit judge establishes that there was no deprivation by the judges of the secrecy of the ballot to any voter. When voters desired to vote openly, or called upon one of the judges to prepare their tickets, they were permitted as a privilege to do so, and not compelled to prepare their tickets in booths, or have two judges make out the ballots. In the absence of any positive practice by the voters sustained by the judges to force an open ballot and in the absence of any proof of the voters being restrained from a free exercise of their privilege, this evidence is not sufficient to reject the returns.

Various other matters of less importance are urged against the returns from these six townships. These boxes were carefully purged, and the returns so purged accepted, instead of being rejected as fraudulent in whole. Official returns are *quasi* records, and stand until overcome by affirmative evidence against their integrity. *Powell* v. *Holman,* 50 Ark. 85. The frauds of individual voters and the casting of unqualified and fraudulent votes do not vitiate the returns unless the officers are parties thereto; but in such cases the returns are accepted and purged of the illegal votes. *Freeman* v. *Lazarus,* 61 Ark. 247; McCrary, Elections, § 539. This was the course pursued, and correctly so, in this case.

S C—7

5. The payment of poll taxes by other parties may be legal or illegal, according to the rule declared in *Whittaker* v. *Watson,* 68 Ark. 555. Upon legally sufficient evidence the court held the payments in question here to have been in due course of business, and not illegal.

6. At Winthrop two polls were opened, and the question is raised as to which was the legal and which the illegal box. A vast amount of evidence was taken on the subject. It is unnecessary and futile to go into that question because the finding in favor of appellants on this issue would not change the result, only lower the majority found in favor of Ashdown. It is only fair, however, to say there is evidence to support the conclusion reached by the circuit judge. There were many illegal votes cast in this election on both sides, and the trial judge seems to have purged freely the returns and votes cast for each contestant, and has reached a conclusion which, on the whole case, seems to be supported by a preponderance of the evidence.

The judgment is affirmed.