BAKER *v.* HEDRICK.

5-785                                    285 S. W. 2d 910

Opinion delivered January 9, 1956.

[Rehearing denied February 6, 1956.]

*John F. Gibson,* for appellant.

*Clifton Bond,* for appellee.

ED. F. McFADDIN, Associate Justice. We have before us on this appeal the validity of a local option election. Pursuant to Initiated Act No. 1 of 1942 (§ 48-801 et seq. Ark. Stats.[1]), a local option election was held in Bradley County on August 7, 1954. The Board of Election Commissioners duly certified the result of the election to be:

> 2001 votes *against* the sale or manufacture of
> intoxicating liquors;

---

[1] In *Denniston* v. *Riddle,* 210 Ark. 1039, 199 S. W. 2d 308, we considered this Initiated Act No. 1 of 1942; and in *Tollett* v. *Knod,* 210 Ark. 781, 197 S. W. 2d 744, we listed some of our cases involving the said Act.

1673 votes *for* the sale or manufacture of intoxicating liquors.

In other words, on the face of the returns, the "Drys" (appellees here) won the election by 328 votes. In due time the "Wets" (appellants here) filed a contest proceeding in the County Court which decided in favor of the contestees; and the contestants appealed to the Circuit Court. There, after an extended trial, the Court found that the contestees won the election by the aforesaid vote of 2001 to 1673. The contestants bring this appeal; and in effect present here one issue — that is, that the conduct and methods employed by the contestees before and during the election constituted such fraud, intimidation and coercion as to void the entire election.

Usually in an election contest the contestant challenges certain designated ballots or the returns from certain designated voting places; but the present election contest is not of that kind. Here, there is no attack on any specified ballots; rather the attack is on the entire election. This is the language of the contestants' petition:

"Come the undersigned contestants, . . . and for their contest of the local option election held in Bradley County, Arkansas, on August 7, 1954, under provisions of Initiated Act No. 1 of 1942, allege:

"1. That prior to and during the conduct of said election, there was such manifestation of intimidation exerted by the Bradley County Drys that many voters were actually prevented from voting as desired to such an extent that the results of the election do not reflect a true sentiment of the electors. That by reason of the intimidation exerted by the Bradley County Drys, the true result of the election cannot be ascertained with certainty.

"2. That fraud, intimidation, or coercion of voters in a system of illegal voting was permitted to such an extent that the result of the election would have been different if such practices had not been engaged in by the Bradley County Drys and certain election officials."

To support the foregoing allegations, the contestants, in Paragraphs 3 to 11 of their petition, alleged specific acts claimed to have been fraud, irregularities or intimidation committed by contestees or their leaders. The record here is voluminous, being approximately 700 pages of pleadings and testimony besides separate exhibits. At the conclusion of the trial, the Circuit Judge delivered his opinion. He named in order nearly every one of the more than forty witnesses who testified; discussed the extent and effect of the testimony of each such witness; and then discussed the combined effect of the testimony offered by each side. From all of the evidence the Circuit Judge found and declared that, even though there had been irregularities and illegalities (definitely named by him) in the election, nevertheless these were not sufficient to void the entire election. From a judgment rendered in accordance with that opinion and dismissing the contest, the contestants bring this appeal.

At the outset we mention that the findings of the Circuit Judge in an election contest have the force and effect that a jury verdict has in the ordinary circuit court case. *Williams* v. *Buchanan,* 86 Ark. 259, 110 S. W. 1024; *Schuman* v. *Sanderson,* 73 Ark. 187, 83 S. W. 940; *Logan* v. *Moody,* 219 Ark. 697, 244 S. W. 2d 499; and *Phillips* v. *Melton,* 222 Ark. 162, 257 S. W. 2d 931.

The appellants claim that the case at bar is ruled by the case of *Patton* v. *Coates,* 41 Ark. 111. That was a landmark case[2]. There, in the days immediately following the Reconstruction, an election was held for County Judge of Pulaski County, and the then recently enfranchised Negro voters attempted to see that every Negro voted for the same candidate: to insure the entire absence of opposition votes, armed bands paraded before some of the election places; various acts of force and intimidation are discussed in the opinion. The result was,

---

[2] On the point here involved, the case of *Patton* v. *Coates* has been cited in the following cases: *Jones* v. *Glidewell,* 53 Ark. 161, 13 S. W. 723; *Freeman* v. *Lazarus,* 61 Ark. 247, 32 S. W. 680; *Schuman* v. *Sanderson,* 73 Ark. 187, 83 S. W. 940; and see also *Sumpter* v. *Duffie,* 80 Ark. 369, 97 S. W. 435; *Williams* v. *Buchanan,* 86 Ark. 259, 110 S. W. 1024; *Crissman* v. *Shaver,* 191 Ark. 692, 87 S. W. 2d 404; *Velvin* v. *Kent,* 198 Ark. 267, 128 S. W. 2d 686; and *Wilson* v. *Luck,* 203 Ark. 277, 156 S. W. 2d 795.

that this Court reversed a finding, that there had been a valid election, and remanded the case for further proceedings. Mr. Justice EAKIN, the author of that opinion, gave this test as to when an election should be set aside:

"The wrong should appear to have been clear and flagrant; and in its nature, diffusive in its influences; calculated to effect more than can be traced; and sufficiently potent to render the result really uncertain. If it be such, it defeats a free election, . . . If it be not so general and serious, the court cannot safely proceed beyond the exclusion of particular illegal votes, or the supply of particular legal votes rejected."

The appellant quotes the above as the test by which to judge this local option election in Bradley County held August 7, 1954; and for the purposes of this appeal, we accept the quotation as the standard by which to test this case, in order to see if the findings of the Circuit Court are without substantial evidence to sustain them.

Here we have these five as the principal irregularities or illegalities in this case:

(1) Letters were sent by the contestees to men in the Armed Services saying that if the recipient had voted "wet" in an absentee ballot and desired to change the ballot, the recipient could request a new ballot and vote again. Of course, such statement as to second voting, was entirely erroneous and in violation of § 3-1509 Ark. Stats. Within a very few days after mailing the said letters, the contestees learned of the illegality that had been proposed, and promptly dispatched a second letter to each recipient correcting the first one. There is absolutely no showing that the first letters resulted in any illegal voting. Their sending was unwarranted, unwise and illegal: but there is no showing that they resulted in a single duplicate ballot being cast in the election.

(2) The contestees heard that the contestants were trying to get the Negro voters to vote "wet" in the absentee box and then vote "wet" *again* in person at the August 7th election; and so the contestees sent mimeographed letters to about 1100 Negro voters urging them

to vote "dry" at all times, and enclosing a circular which stated that it was a fine of $100.00 to vote more than once in the same election. A portion of § 3-1121 Ark. Stats. was copied in the circular. It is claimed that this "$100.00 fine circular" was intimidation. The mimeographed letter (contestees' Exhibit No. 4) is in the most polite language, contains no threats or suggestions of intimidation, and explains that the circular is not a threat but a mere statement of a portion of the law. There were five witnesses who testified that they decided not to vote after seeing this circular because it "scared them." Let us assume that the circular, worded as it was, should not have been sent; nevertheless there is no proof that it affected more than five voters. Certainly such evidence is not sufficient to void an entire election.

(3) There is testimony that two ardent "drys" met with Negro voters individually and collectively and urged them to vote "dry." These meetings and conferences were not illegal: open and free discussion is always proper. Campaigning is one of the practices in our democratic system of society. One Negro said that he was "threatened" by such conversation; yet he admitted that he voted "wet," and the evidence showed that he worked for the "wets" all through the election period. Certainly he was not prevented or intimidated from voting or working with others for the side that he espoused. The testimony, that the white man "threatened" him, is without corroboration. These items (2) and (3) are the only portions of the testimony that bear on the matter of intimidation.

(4) It was shown that in two precincts the voting box on the August 7th local option election was located at a place 100 to 450 feet distant from where it had been located at the previous July 28th primary election; but in neither precinct was it shown that anyone was deterred or hindered from voting. In each precinct the voting box was at a place theretofore or thereafter used in other elections; and it was shown that it was not unusual to have the voting box either at the store or at the church a short distance away. Certainly there was noth-

ing in these two claims — involving only two boxes out of twenty-seven — to void an entire county-wide election.

(5) The greatest irregularity occurred in the absentee box in which the certified vote was 101 *against* the manufacture or sale of intoxicating liquors and 260 *for* the manufacture or sale of intoxicating liquors. It was shown that there were 94 requests for absentee ballots which were never honored because the notation on each envelope indicated it to be a ballot instead of a *request* for a ballot. These envelopes were made exhibits: each was addressed to the County Clerk at Warren, Arkansas, and bears on the face of the envelope these words: "Ballot, Local Option"; and in most instances the words, "Ballot, Local Option," are in the same handwriting as that of the address. The County Clerk testified that he thought these were *ballots,* instead of *requests for ballots;* and so he placed them in the receptacle for ballots; and it was not discovered until after the election that these were mere requests. If we should say that each one of the 94 requests was from a person who intended to vote "wet," and if we added these 94 to the 1673 ballots received by the contestants, still the result would not be sufficient to change the election. The Circuit Judge found as a fact that there was no fraud in regard to the absentee ballot box, and there is substantial evidence to sustain his findings.

There were other charges of illegalities and irregularities, but they lacked any substantial proof to support them. In *Velvin* v. *Kent,* 198 Ark. 267, 128 S. W. 2d 686, in speaking of charges of fraud and improper conduct of electors and officers of the election, this Court said:

"These charges were serious and grave, but they did not prove themselves. Forceful and emphatic denunciation at this time does not supply proof wholly lacking upon the trial."

The quoted statement finds application in the case at bar. Furthermore, in *Jones* v. *Glidewell,* 53 Ark. 161, 13 S. W. 723, Chief Justice Cockrill said:

"It is a serious thing to cast out the votes of innocent electors for acts done by others, and it is the province of the Courts to see that every legal vote cast is counted when the possibility exists."

Without prolonging this opinion to discuss each of the other claimed irregularities, it is sufficient to say that the Circuit Court did not condone any illegalities or irregularities that occurred in this election. Neither do we condone them, but we do say that there is substantial evidence to sustain the findings of the Circuit Court to the effect that all of the specific items of irregularities and illegalities, when totalled, were not sufficient to void the entire election within the test stated in *Patton* v. *Coates,* as heretofore quoted. It is a serious matter to throw out an entire election; and that result should not be reached unless the contestant has offered proof sufficient to satisfy the test in *Patton* v. *Coates.* The Circuit Judge found that the test had not been met in the case at bar; and there is substantial evidence to sustain his findings.

One other matter appears most significant. The poll tax list of Bradley County for the year of this election showed that there were 5053 poll taxes issued. There were a total of 3674 votes cast in this August 7th local option election, which total is more than 72% of the total poll tax receipts. Of course, maiden voters and "move-ins" might have increased the total voting capacity of 5053; but deaths and removals might have equalled the maiden voters and "move-ins." The point is, that the vote in this election of August 7th was 72% of the total poll tax receipts issued. It is not claimed that any of the 3674 votes were illegal. Only five people testified that they failed to vote because of the "$100.00 fine circular," and 94 requests for absentee ballots failed to be honored. There was no showing that *any one* of the remaining voters of Bradley County was deterred from voting or coerced to vote against his wishes. Furthermore the evidence discloses that in the primary election of July 28, 1954 — in which there was a most spirited race for nomination for United States Senator and for

Governor — there were only 3595 votes cast in all of Bradley County. So in the local option election of August 7th there were 79 more votes cast than in the primary election. This seems a most cogent argument against the contestants' allegation that "many voters were actually prevented from voting."

The Circuit Court found that the contestants' evidence failed to meet the test stated in *Patton* v. *Coates;* and we find substantial evidence to support the Circuit Court's finding.

The judgment is affirmed.

Mr. Justice ROBINSON not participating.