PARKER v. ROWAN, CHANCELLOR.

5-3763                                            395 S. W. 2d 338

Opinion delivered November 8, 1965.

*Arnold & Hamilton,* for appellant.

*N. L. Schoenfeld,* for appellee.

ED. F. McFADDIN, Associate Justice. The present petition for a writ of prohibition is another step in the legal battle between the "Wet" and the "Dry" forces in Ouachita County. To get the proper perspective it is well to list the various proceedings that have reached this Court in such battle in the past few years:

(a) Prior to November 6, 1962 Ouachita County was "wet." At the General Election on November 6, 1962 there was a local option election in Ouachita County, and the result of that election was certified in favor of the "Drys."

(b) The "Wets" filed an election contest, which had the effect of keeping the County wet until the final determination of the contest. (Ark. Stat. Ann. § 48-827 *et seq.* [Repl. 1964].) This interpretation of the law was explained in our Opinion in *Hendrick* v. *Hickman,* 225 Ark. 273, 280 S. W. 2d 406.

(c) The Wets delayed the "final determination" of the election contest as long as possible. On October 12, 1964, in Case No. 3420 styled *Hendriks* v. *Parker,* we issued a *per curiam* order dismissing the appeal of the Wets. The petition for rehearing was denied on November 10 ,1964; and that was the "final determination" of the contest, as those words are used in Ark. Stat. Ann. § 48-827 *et seq.* (Repl. 1964). So really the liquor dealers in Ouachita County had only 60 days from and after November 10, 1964 in which to dispose of their liquor stocks; and then the further sale of liquor would have been illegal in Ouachita County by virtue of the 1962 local option election.[1]

(d) However, on November 3, 1964 there was another local option election[2] in Ouachita County, and

---

[1] But see Paragraph (e) *infra,* wherein the date allowed liquor dealers to dispose of their stocks was fixed at August 6, 1965.

[2] Under Act No. 15 of 1955 (Ark. Stat. Ann. § 48-824 [Repl. 1964]) such local option election must be on the date of the General Election and therefore cannot be oftener than every two years; so the 1964 election was the first opportunity the Wets had to again test the vote of the electors.

the result of that election was certified in favor of the Wets. The Drys duly filed an election contest in the County Court; and the legal effect of that contest was to postpone the results of the November 3, 1964 election until the "final determination"[3] of the contest. The County Court dismissed the Drys' contest on August 6, 1965; but under Ark. Stat. Ann. § 48-821 (Repl. 1964) and Ark. Stat. Ann. § 27-2001 (Repl. 1962) the Drys have six months from that date to appeal to the Circuit Court in the matter of the 1964 election contest.

(e) After the 1964 local option election the Wets filed a "petition for declaratory judgment" in the Ouachita Chancery Court, naming the Prosecuting Attorney as a defendant. The Drys intervened. The Wets claimed that the effect of the 1964 local option election in favor of the Wets wiped out all the results öf the 1962 election in favor of the Drys, and that the sale of liquor was legal in Ouachita County because of the 1964 election, regardless the case involving the 1962 election. The Chancery Court agreed with the Wets, and the Drys appealed to this Court in Case No. 3571, styled *Parker* v. *Hendriks,* on June 7, 1965. We decided that case: reversing the Chancery Court and ordering an immediate mandate. Since the liquor stores had continued in business in Ouachita County under the Chancery Court decree, we ordered that an immediate mandate would issue from this Court so that the liquor dealers would have only 60 days from June 7, 1965 to dispose of their stocks; and thereafter there could be no more legal sales of liquor in Ouachita County until the "final determination" of the contest on the 1964 local option election.

(f) It seems that our Opinion and holding in said Case No. 3571 should have settled all questions until the "final determination" of the contest of the 1964 election; but the Wets then filed, on August 11, 1965, another suit in the Ouachita Chancery Court, asking the Court to answer this question: "The question is: what is the effect of the ruling of the Arkansas Supreme Court in *Parker* v. *Hendriks* June 6, 1965 with the 'contest' hav-

---

[3] This contest has not been finally determined, as will be discussed subsequently.

ing been dismised August 6. 1965 in Case No. 178 in the Ouachita County Court—there now being no contest or other legal proceeding pending in any court challenging the effect of and the 713 margin vote *for* the sale of licensed beverages in Ouachita County November 3, 1964.'' The basis of the Wets claim in the Chancery Court case filed on August 11, 1965 was: that the County Court on August 6, 1965 had dismissed the Drys' contest of the 1964 election; that no appeal had been filed in the Circuit Court from that order; so there was nothing to prevent the County Court order of August 6, 1965 from being a ''final determination,'' even though the Drys had and have six months from August 6, 1965 within which to appeal to the Circuit Court.

(g) When the Chancery Court entertained jurisdiction of the Wets' petition, as filed on August 11, 1965, the Drys filed in this Court their present petition for a writ of prohibition to prohibit the Chancery Court from hearing the Wets' petition for a declaratory judgment. This petition for writ of prohibition is the present Case No. 3763 in this Court. We granted a temporary writ of prohibition September 7, 1965, and now the matter is before us for final determination. In the meantime, sale of liquor in Ouachita County has been illegal since August 6, 1965 and this, because of our holding and judgment in Case No. 3571, decieded by us on June 7, 1965.

The foregoing and rather lengthy detailing of the legal battles between the Wets and Drys in Ouachita County brings us to our decision in the present controversy; and we now make permanent the temporary writ of prohibition issued by us in this case on September 7, 1965. There are several reasons for our decision, but one is sufficient.

CHANCERY COURTS HAVE NO POWER TO INTERFERE WITH ELECTION CONTESTS. Beginning with *Willeford* v. *State,* 43 Ark. 62, and continuing to date, we have an unbroken line of cases, all holding that equity has no power to interfere with election contests. In *Walls* v. *Brundidge,* 109 Ark. 250, 160 S. W. 230, Ann. Cas. 1915C 980, Mr. Justice Kirby reviewed many cases and summarized the holdings:

"From these authorities it is conclusive that the trial of election contests and the adjudication of political rights and the protection of persons in their enjoyment were not matters of cognizance by courts of equity when our Constitution was adopted, and the Legislature had power only to vest the chancery court with jurisdiction in matters of equity, and was without power to enlarge such jurisdiction beyond such matters as courts of equity at the common law exercised jurisdiction in, and such courts having no jurisdiction of election contests and the adjudication of political rights were given none by our said Constitution."

In *Sheffield* v. *Heslep,* 206 Ark. 605, 177 S. W. 2d 412, we quoted from *Rhodes* v. *Driver,* 69 Ark. 606, 65 S. W. 106, 86 A. S. R. 215:

" 'A court of equity will not permit itself to be made the forum of determining the disputed questions of title to public offices, or for the trial of contested elections, but will in all such cases leave the claimant of the office to pursue the statutory remedy, if there be such, or the common law remedy by proceedings in the nature of a *quo warranto.'* "

Thus, as long as an election contest is pending, the Chancery Court has no jurisdiction to interfere in such controversy. Regardless of whether the proceeding filed by the Wets in the Ouachita Chancery Court on August 11, 1965 be called a "petition for declaratory judgment" "petition for injunction" or some other pleading, the net effect is the same: the Chancery Court was being asked to declare that during the time allowed by law for the Drys to appeal to the Circuit Court there was no election contest pending.

In many cases when a judgment is rendered it is considered as final until reversed; but our statute on local option liquor elections establishes an entirely different rule in such cases, Act No. 212 of 1957, as found in Ark. Stat. Ann. § 48-827 (Repl. 1964) says of local option liquor election contests that if the election is contested there is no *final determination* until "the date of the issuance of the mandate by the court finally determining

an election contest." This Act No. 212, when fitted into our local option election law in liquor cases, applies to contests by Drys as well as to contests by Wets. The effect of our said statute is that the *status quo ante* in liquor matters will not be changed until the "final determination" of the election contest.

The contest of the 1964 local option election in Ouachita County has not been finally determined. As we have previously pointed out (and because of Ark. Stat. An. § 48-821 [Repl. 1964] and Ark. Stat. Ann. § 27-2001 [Repl. 1962]), the Drys have six months from August 6, 1965 to prosecute their appeal in the Circuit Court; and under the plain wording of Ark. Stat. Ann. § 48-827 (Repl. 1964) there has been no "final determination" because there has been no "issuance of the mandate by the court finally determining an election contest." The fact that the Drys have not yet filed their appeal in the Circuit Court only shows that they are taking all the possible time allowed in contesting the 1964 election, just as the Wets took all possible time allowed in contesting the 1962 election. It is a case of "sauce for the goose is sauce for the gander." Until the 1964 election contest is finally determined, the *status quo ante* remains; and the Chancery Court has no jurisdiction to determine the effects of an election, the contest of which is still undetermined.

The Wets say that the result of such a holding, as we are now making, is to delay, if not to thwart, the will of the electors as expressed in the 1964 election. But the answer to that question is simple: it is for the Legislature of Arkansas to fix the time for filing a local election contest, and to shorten the time for appeals in such cases, provided the Legislature sees fit to enact such legislation. The Wets cannot accomplish such result by going into the Chancery Court under the guise of a declaratory judgment proceeding. We reaffirm our holdings in *Hedrick* v. *Hickman,* 225 Ark. 273, 280 S. W. 2d 406; and *Parker* v. *Hendriks,* 239 Ark. 667, 393 S. W. 2d 251.

The temporary writ of prohibition issued in this case is now made permanent.

JOHNSON, J. dissents in Part.