Robert A. Parker et al *v.* L. V. Hendricks et al

5-4081                                      407 S. W. 2d 385

Opinion delivered October 31, 1966

*Arnold & Hamilton,* for appellant.

*Brown, Compton & Prewett,* for appellee.

Ed. F. McFaddin, Justice. This is another "Wet" v. "Dry" case from Ouachita County.[1] In the present appeal the "Drys" are the appellants and the "Wets" are the appellees.

In the 1964 General Election there was submitted to the voters[2] of Ouachita County the question of the legal sale of liquor in that County, and on the face of the returns the vote was:

For the legal sale of alcoholic beverages     6310

Against the legal sale of alcoholic beverages  5618

---

[1] In *Parker* v. *Rowan,* 239 Ark. 929 S. W. 2d 338, we listed in some detail some of the Ouachita County litigation on this issue.

[2] This was in accordance with Initiated Act No. 1 of 1942, as found in Ark. Stat. Ann. § 48-801 *et seq.* (Repl. 1964.)

Thus, on the face of the returns, the "Wets" won the election. The "Drys" asked for and obtained a recount by the Election Commissioners; and the result of such recount showed the certified result to be:

For the legal sale                    6364

Against the legal sale                5651

or a majority for the "Wets" of 713 votes.

The "Drys" then filed a contest in the County Court, which contest was unsuccessful; and the case was appealed to the Circuit Court, wherein there was a lengthy trial for a number of days. The "Drys" alleged many irregularities and illegalities connected with the voting and asked that all of the ballots be thrown out[3] from each of eighteen precincts. The Circuit Court judgment was in favor of the "Wets" and the "Drys" bring this appeal, presenting only a partial record and urging only one point:

"The Lower Court erred in failing to strike all votes cast in Camden Ward 3B from the total votes cast in the local option election."

In Camden Ward 3B the certified returns after the recount showed a total of 828 votes for legal sale and 88 votes against legal sale; or a majority for the "Wets" of 740 votes in that particular ward. As previously stated, the certified returns showed the "Wets" winning by 713 votes; so if the entire vote from Camden Ward 3B should be thrown out, then the "Drys" would win the election by 27 votes. This makes readily apparent the materiality of Camden Ward 3B; and we proceed to the evidence as to conditions surrounding the voting in that ward.

---

[3]The words, "Thrown out," are frequently used in regard to election contests. Funk & Wagnalls New Standard Dictionary of the English Language says of "throw out," ". . . to cast out or aside; reject; as to throw out dishonest items . . ." Webster's International Dictionary, 2nd edition, says of "throw out," ". . . to cast out, to reject, or discard. . ."

The election was a General Election, with constitutional amendments as well as State and County officers on the ballot. Because of the large number of voters in Camden Ward 3B the election officials realized that with one set of judges and clerks the counting of the ballots would require days; so the Election Commissioners selected two sets of judges and clerks and two ballot boxes and two tables, all being located in the same room.[4] When a voter arrived to vote and entered the room, he went to whichever of the tables had the shortest line of people waiting; the voter was checked against the list of qualified voters and allowed to vote, if qualified. The Chairman of the Board of Election Commissioners testified that this procedure for two sets of judges and clerks was done to speed the voting and to complete the counting of the ballots as soon as possible. Even with the two sets of judges and clerks, as outlined, the counting of the ballots from Camden Ward 3B was not completed until 5:00 a.m. the morning following the election.

Appellants assailed this "two box—two sets of officials" procedure as being highly irregular; and that is one of the grounds for claiming that the entire returns from Camden Ward 3B should be thrown out. In addition, the appellants claim other matters, to-wit:

(a) That while the judges and clerks at the two tables may have signed the oaths of office, nevertheless the notary or other official failed to complete the jurat of such election officials; and this is claimed as a fatal irregularity.

(b) That at least 7 named people voted twice (once at each table), and that some 58 named people voted who were not on the list of qualified voters; and this irregularity is claimed to be sufficient to throw out all the votes in Camden Ward 3B.

---

[4]Each set of judges and clerks counted and certified the votes in the box that such judges and clerks had been using at their table.

(c)   That after the recounting of the ballots (as requested by the appellants) the ballots were not placed back in the same boxes from which they had been taken, so that it is now impossible to determine which set of election judges and clerks allowed any specific person to vote; and this is claimed to be fatal to the entire vote.

(d)   That the two sets of election judges and clerks were not properly instructed as to their duties and did not follow the requirements of the law in many instances; and this is claimed to be fatal to all of the votes cast in Camden Ward 3B.

Some, if not all, of the County election officials and judges and clerks in Camden Ward 3B testified in the Circuit Court case, and such testimony is before us. We are impressed with the integrity that these witnesses demonstrated. They did not profess to know all about the election laws in Arkansas (who does?); but they honestly desired to hold a fair and impartial election. There is no showing that any illegal or irregular votes were cast except to the extent of not to exceed 65 specifically named and challenged voters, and this number would not change the result of the election. There is no fraud shown to have been committed in the Camden Ward 3B election. With becoming candor the appellants say:

"... no contention is here made of deliberate fraud on the part of any person serving in the capacity of an election official in Ward 3B Camden. So far as the record is here presented, the multitude of irregularities which unquestionably occurred, were the result of three failures, which are:

"1.   The failure by election officials to properly instruct the persons selected by them to serve as election officials.

"2.   The failure of election officials to follow the procedure prescribed in order to legally conduct an election in Ward 3B.

"3. The failure of the precinct officials to understand and perform their duties in the manner prescribed by law."

Even after making the above quoted concession, appellants insist that we should throw out all the ballots in Ward 3B Camden; and to sustain such contention appellants cite these cases from other jurisdictions: *Tebbe v. Smith* (Calif.), 41 p. 454; *Hatfield v. Scaggs* (W. Va.), 133 S. E. 109; *Kerrigan v. Vetsch* (Minn.), 71 N. W. 2d 652; *State of Iowa v. Community School Dist.* (Iowa), 78 N. W. 2d 86; and *Johnson v. Hall* (Ky.), 121 S. W. 2d 935.

It would serve no useful purpose to state the facts and the holdings in each of these cited cases from other jurisdictions because we have Arkansas cases which completely answer the appellants' contentions. In *Henderson v. Gladish,* 198 Ark. 217, 128 S. W. 2d 257, we said:

"All provisions of the election law are mandatory, if enforcement is sought before election in a direct proceeding for that purpose; but after election all should be held directory only, in support of the result, unless of a character to effect an obstruction of the free and intelligent casting of the vote or to the ascertainment of the result, or unless the provision affects an essential element of the election, or unless it is expressly declared by the statute that the particular act is essential to the validity of the election, or that its omission shall render it void."

So if we struck out the maximum of 65 votes particularly and specifically challenged in Camden Ward 3B, we would still know the result; and the result of this election would not be changed by striking out the said 65 votes.

Furthermore, we have repeatedly stated the quantum of evidence that must be shown in order to justify a court in throwing out all the ballots in an election or

in a precinct. The case of *Baker* v. *Hedrick,* 225 Ark. 778, 285 S. W. 2d 910, involved a "Wet" v. "Dry" election contest from Bradley County, and the contention was there urged that all of the votes should be thrown out because of irregularity; and in disposing of that contention we quoted from Judge Eakin's language in the case of *Patton* v. *Coates,* 41 Ark. 111, as to what must be shown before all the ballots in a precinct will be thrown out:

> " 'The wrong should appear to have been clear and flagrant; and in its nature, diffusive in its influences; calculated to effect more than can be traced; and sufficiently potent to render the result really uncertain. If it be such, it defeats a free election, . . . . If it be not so general and serious, the court cannot safely proceed beyond the exclusion of particular illegal votes, or the supply of particular legal votes rejected.' "[5]

In *Jones* v. *Glidewell,* 53 Ark. 161, 13 S. W. 723, Chief Justice Cockrill, speaking for this Court, said:

> "It is a serious thing to cast out the votes of innocent electors for acts done by others, and it is the province of the courts to see that every legal vote cast is counted where the possibility exists."

In the case at bar we are convinced that the Election Commissioners and election officials in Camden Ward 3B honestly and conscientiously tried, to the best of their abilities, to see that a fair and honest election was held. No fraud was shown or claimed. It would be outrageous to throw out all the votes in Camden Ward 3B under the facts in this case. We agree with the Circuit Court that we do not condone irregularities or illegali-

---

[5]In a footnote to *Baker* v. *Hedrick, supra,* we cited a number of cases which have followed *Patton* v. *Coates,* and some of these involved the vote in one precinct, as distinct from the entire election.

ties; but we do say that there is substantial evidence to sustain the findings of the Circuit Court to the effect that all of the specific items of irregularities and illegalities, when totalled, were not sufficient to void the entire election in Camden Ward 3B.

Therefore we affirm the judgment of the Circuit Court.