SRUM *v.* SLANKARD.

## Opinion delivered April 22, 1918.

1. ELECTIONS—CONTEST—FINDING OF COURT.—In the contest of an election for the office of constable of a certain township, *held,* the finding of the circuit judge that the election was without fraud would under the evidence be upheld.

2. ELECTIONS—CONTEST—ORAL TESTIMONY.—In the contest of an election, where fraud is alleged, oral testimony is admissible to contradict the ballots. A ballot is a writing or a *quasi*-record, but when imbued with fraud it gives way to oral testimony which is credible.

3. ELECTIONS—CONTEST—FINDING OF COURT.—In the contest of an election it was contended that the ballots had been tampered with, *held,* where the trial court found from the evidence that the ballots had not been changed or tampered with it properly held that the ballots were the best evidence of the true result.

Appeal from Sebastian Circuit Court, Greenwood District; *Paul Little,* Judge; affirmed.

*A. A. McDonald,* for appellant.

1. The official count and returns of the election judges show that appellant was duly elected. 50 Ark. 505; McCrary on Elections, 293. The recount afterwards, when the ballots had been subject to have been tampered with or changed should not prevail over the official count and return. 6 S. W. 505-9; 75 Ark. 452; 50 *Id.* 85. The ballots had lost their presumptive purity and were no longer the best evidence. Unauthorized persons had handled the ballots. The official count and return should prevail. 50 Ark. 85; 53 *Id.* 161; 94 *Id.*

478; 75 *Id.* 452; 124 *Id.* 247. The recount was not valid. 61 *Id.* 247.

2. The court erred in its findings of facts and declarations of law. Parol evidence was admissible to show that the ballots had been or could have been changed. 10 A. & E. Enc. 831-2; 113 Ind. 148; 85 Ky. 597; 94 Ark. 478; 193 S. W. 98; 95 Ia. 64. It is evident the ballots had been changed after the official count and before the recount.

*Holland & Holland* and *Geo. W. Dodd,* for appellee.

1. Srum agreed to the recount which showed appellee's election and a certificate was issued to him. This is the official count. Kirby's Dig., § 2837. The recount was made to correct possible mistakes in a long ballot.

2. Appellant rests his case on suspicion and presumption. Ballots are the best evidence. Parol evidence was not legally admitted. 97 Am. Dec. 141; 94 Ark. 483. The ballots had not lost their presumptive purity—they had not been tampered with. The burden was on appellant. 124 Ark. 244. See also 15 Cyc. 430.

When a recount is ordered the certificate of the election commissioners is *prima facie* true, and can only be overturned by proof. 61 Ark. 253. A recount may be granted on petition. Kirby's Digest, § 2837. It then becomes the official count. As to the powers of canvassing boards, see 9 R. C. L., §§ 114-116.

3. Elections statutes and for the preservation of returns are directory merely. 15 Cyc. 426. Mere irregularities where the will of the voter has not been changed or suppressed are disregarded. 9 R. C. L., § 111.

4. The ballots were properly kept and the court found they had not been tampered with or changed. The findings of the election commissioners, the county court and circuit court are very persuasive. The judgment should be affirmed.

STATEMENT OF FACTS.

Lee Srum instituted a contest in the county court against James Slankard for the office of constable of

Hartford township in Sebastian County, Arkansas. The trial in the county court resulted in a judgment in favor of Slankard, and from this judgment Srum appealed to the circuit court. In the circuit court the case was tried on a state of facts substantially as follows:

At the general election held on Tuesday, November 7, 1916, James Slankard, Democrat, Marion Studdard, Republican, and Lee Srum, Independent, were opposing candidates for the office of constable of Hartford township. There were five voting precincts in the township and the certificate of the judges of said voting precincts shows the vote for the office of constable to be as follows:

| "Place. | Slankard. | Studdard. | Srum. |
|---|---|---|---|
| Ward 1 | 27 | 14 | 19 |
| Ward 2 | 18 | 20 | 25 |
| Ward 3 | 57 | 35 | 50 |
| County Precinct | 15 | 38 | 12 |
| West Hartford | 19 | 18 | 36 |
| Totals | 136 | 125 | 142" |

Slankard asked for a recount of the ballots by the county election commissioners and gave notice to that effect to Srum. Srum made no objection to the recount of the ballots by the commissioners. A recount of the ballots by the commissioners showed that Slankard received 130, Studdard 116, and Srum 113 votes. A certificate of election was then issued and delivered to Slankard as the duly elected constable of Hartford township. Subsequently Srum instituted this proceeding to contest the election of Slankard. Studdard took no part in the contest.

John W. Goolsby was one of the judges in ward 2. After the ballots were counted they were placed in an envelope, which was sealed, and with one set of poll books were delivered to Goolsby to be delivered to the county election commissioners. On the night of the election the judges of ward one brought their returns to Goolsby and requested him to deliver them to the county

election commissioners. Subsequently the judges of the
other wards when they found that Goolsby had been se-
lected to take charge of the returns brought the returns
from their wards to him and delivered them to him to be
carried to the election commissioners. The ticket was
very long, and the judges worked until late Tuesday
night completing the count. Goolsby had a headache and
did not take the returns to the election commissioners
until Thursday morning. On that morning the returns
from Ward 3 were delivered to him, and the returns from
West Hartford were also given to him before he started
to Huntington where one of the election commissioners re-
sided. The ballots from each of the wards were placed
in an envelope which was sealed up before it was de-
livered to Goolsby. Goolsby carried the election returns
to Huntington in an automobile and was about thirty-five
minutes in making the trip. Slankard went with him in
the automobile but Goolsby, Slankard and the driver all
testified that the ballots were not in any wise tampered
with on the journey. When they reached Huntington,
Goolsby at once delivered the returns to John W. Jasper,
one of the county election commissioners. Jasper testi-
fied that the ballots were in sealed envelopes which did
not appear to have been tampered with. Jasper placed
the returns in his safe to which only himself and his
clerk had access. Both he and his clerk testified that
they were not in any wise tampered with while in his
possession. On the night of the election Goolsby took the
returns from Wards 1 and 2 to his residence and kept
them until he started for Huntington on Thursday morn-
ing. He testified that there was no opportunity for any-
one to tamper with them while they were at his resi-
dence. The returns from Ward 3 and the county pre-
cinct were kept intact until they were delivered to
Goolsby on Thursday morning and it was shown that they
were not in any wise tampered with. The election re-
turns from the West Hartford precinct were kept in the
vault of a bank in the town of Hartford, and it was shown

that customers of the bank had access to the vault in which the returns were placed. It was not shown, however, that anyone tampered with the returns and the envelope in which the ballots were sealed did not show any evidence of having been broken open.

All three of the judges and the clerk from Ward 2 testified that several of the voters had scratched all three of the candidates for constable and that they did not count any of these for any of the candidates for constable; that they did not in any manner change or alter any ballot while it was in their possession; that they endeavored to count the ballots as they were cast.

Some of the judges and clerks from the other wards were introduced as witnesses, and they testified that they did not change any of the ballots while they were in their custody, and that the ballots were not changed by any of the other judges or clerks; that when they finished the count they placed the ballots in a sealed envelope and that they had endeavored to count them just as they had been cast by the voters. They stated that there were some ballots in which all three of the candidates for constable had been scratched and that these ballots had not been counted for either candidate.

About seventeen witnesses were examined who testified that they voted for Srum for constable and that they did not scratch out the names of all three of the candidates. Three of these witnesses voted in the West Hartford precinct; four of them in Ward 3, seven in Ward 1; three in Ward 2 and one in the county precinct. Some of these witnesses were foreigners and could scarcely speak English. Some of them voted for the first time at this election; some stated positively that they had voted for Srum; others stated that they intended to vote for him and thought they had voted for him but did not state this as a positive fact. The court made specific findings of fact in favor of Slankard in regard to each of the wards. We do not deem it necessary to set out these findings but will refer to them and to

additional testimony introduced in support of the find-
ings in the opinion. The court refused the declarations
of law asked by Srum but made a declaration of law as
follows:

"The court finds that all the ballots cast in the
election in Hartford township, except the ballots in West
Hartford precinct were kept and guarded with that jeal-
ous care in such a manner as is provided by law. I find
that the ballots in West Hartford precinct as kept in the
vault of the Bank of Hartford were so exposed as to have
afforded opportunity to be tampered with, and that they
were not guarded with the jealous care which will contra-
vene all suspicion of substitution or change. I find that
they have lost their presumptive purity and are no longer
to be relied upon as evidence in this case and that the
official returns from that precinct as made and published
by the judges of the election in said precinct is hereby
declared to be the final and conclusive count of the vote in
said precinct. I find from affirmative proof that the ballots
in all other precincts and wards have maintained their
purity and integrity and that the recount in all wards and
precincts, except West Hartford, were legal and proper
and that the aggregate of the recount in all wards and
precincts except West Hartford together with the official
vote in West Hartford shall be and is hereby declared to
be the lawful result of said election. While the ballots
from West Hartford, as kept in the bank were exposed
in such a manner as is condemned by the law, yet the
court finds that there is no testimony in this case what-
ever to show they were tampered with. And I declare
the impurity of said ballots for the sole reason that they
were exposed to the association of the customers of the
bank who might have, had they been inclined to do so,
tampered with them. I find the result when the ballots
are counted as above indicated to be Slankard 132, Srum
122.

"The purity of all ballots having been declared ex-
cept West Hartford, it is not lawful to consider the testi-

mony of individuals as to how they voted as the ballots themselves under the law are held to be evidence and not subject to impeachment until they have been shown to be exposed and tampered with.

"Mr. James Slankard is hereby declared to be the duly elected constable of Hartford township and entitled to said office and judgment is rendered accordingly."

From the judgment rendered Srum, the contestant, has duly prosecuted an appeal to this court.

HART, J., (after stating the facts). It appears that the returns made by the election judges in the various precincts of Hartford township show that Srum was elected. Slankard gave notice to Srum that he would ask for a recount of the ballots by the county election commissioners under the provisions of section 2837 of Kirby's Digest. Srum made no objection to the recount and it was made by the election commissioners. The recount showed that Slankard received the highest number of votes for constable and he was given a certificate of election. Srum then instituted a contest. It is conceded that the ballots were preserved in accordance with the statute from the time a recount was had until they were produced at the trial in the circuit court. The record, also, shows that no changes were made in the ballots after they came into the hands of the election commissioners. The evidence, also, shows that the ballots were not changed or in any wise tampered with while Goolsby was carrying them from Hartford to Huntington to deliver them to one of the election commissioners. The evidence shows that the ballots from the West Hartford precinct were placed by the election judges in an envelope and that it was sealed. They were then deposited in the vault of a bank in Hartford and remained there throughout the day Wednesday and were carried to Huntington on Thursday morning. It was shown that the customers of the bank had access to the vault where the ballots were deposited throughout the day on Wednesday. It is not shown, however, that the ballots were tampered with. On the other hand from

its appearance the envelope showed that it had not been opened. The original returns from this precinct showed that 36 persons voted for Srum and 19 for Slankard. The recount showed 17 votes for Slankard and 27 for Srum. Only three witnesses testified that they voted for Srum in this precinct. The other witnesses testified in regard to the other precincts.

The court in its finding took the original count as to West Hartford. It is apparent that the action of the court as to this precinct resulted in no prejudice to the rights of Srum. Indeed the right of Srum to reverse the judgment is predicated upon errors alleged to have been made by the trial court with regard to the other precincts in the township. The recount by the county election commissioners shows that Slankard received the highest number of votes for constable. It is not contended that an error was made in the recount. The contest is based upon the contention that the ballots were changed by the judges while counting the votes or that they were changed while in the hands of one of the judges after the votes were counted. Persons who voted at the election were introduced as witnesses to establish this fact.

(1-2) It is insisted by counsel for the contestant that the effect of the court's finding was to hold that this testimony was not admissible to contradict the ballots. We do not agree with this construction of the findings of the court. The record shows that objection was made to the testimony on the ground that the ballots could not be contradicted by oral testimony. The court permitted the testimony to be given, and we think the record shows that it considered it in arriving at its conclusion.

It is true a ballot is a writing or a *quasi*-record, but like any other instrument of the same character, when imbued with fraud, it gives way to oral testimony which is credible. We think the finding of the court shows that the oral testimony was received and considered by

the court for the purpose of showing whether or not the ballots had been changed or tampered with since they had been cast by the voters. The court made an express finding from the proof that the ballots in all the other precincts and wards except West Hartford had maintained their purity and integrity. In making its finding in this respect the court had before it the ballots themselves whose appearance indicated that they had not been tampered with. It is well known that when ballots are made out by different persons that some of the marks on the ballots will be marked with a heavier pencil line than others and that if the ballots were changed and the marking had been done by a single person, the lines would be more uniform unless the work was done by an expert forger. This was a proper matter for the court to consider in making its findings in the premises. Some of the judges and clerks from each precinct were introduced as witnesses. They testified that no changes were made in the ballots while they were being counted.

Witnesses were also introduced who testified that the ballots were carefully preserved by one of the judges after they were placed in sealed envelopes. It is true that witnesses were introduced who testified that they had voted for Srum when the ballots themselves indicated that they had scratched out the names for all three of the candidates for constable. The court had these witnesses before him and doubtless thought their testimony was not of that unequivocal character which carried conviction with it. Some of the witnesses were foreigners and could scarcely read English. Others were voting for the first time. Others did not testify in a positive manner. The ticket was a very long one, containing all the State, county and township officers as well as the amendments to the Constitution. It may be that the witnesses intended to vote for Srum and became confused at the length of the ticket, and did not remember correctly what they had done. In any event there was evidence of a substantive character to support the findings

of the court and we can not disturb it on appeal. *Webb*
v. *Bowden,* 124 Ark. 244.

(3)   The court, having found from the evidence that
the ballots had not been changed or tampered with, prop-
erly held them to be the best evidence of the true result.
*Condren* v. *Gibbs,* 94 Ark. 478.

The judgment will, therefore, be affirmed.

SMITH dissents.

HART, J., (on rehearing).   It is earnestly insisted
that the opinion overrules the principles of law laid down
in *Powell* v. *Holman,* 50 Ark. 85, and *Lovewell* v. *Bowen,*
75 Ark. 452.   We do not think so.   We think the holding
of the court is in accord with the decisions in those cases.

In the first mentioned case the ballots and poll books
were placed in an unsealed sack and deposited in a ward-
robe in a public hall where at least four different organi-
zations held their meetings.   They were then placed in
a room connected with the clerk's office and kept for a
week and the court expressly found that access to them
could easily have been had through the insecure fasten-
ings of the office.

In the last mentioned case the ballots had first been
used as evidence in the trial of an election contest and
had passed under the dominion and control of the court.
The court held that the control of the election commis-
sioners over the ballots ceased when they first produced
them in court, and that no assumption of official regular-
ity could be indulged in when the ballots were presented
by the election commissioners on the second trial.

Here the facts are essentially different.   The bal-
lots and one set of the poll books were placed in sealed
envelopes and given to one of the judges.   That judge
kept them at his residence for the remainder of the night,
during the next day and during the next night.   Accord-
ing to his testimony they were not tampered with dur-
ing the night time while he was at home.   It was true he
was down town for a part of the time in the day time;
but his house was not a public place where people were

accustomed to go.   There was nothing in the appearance of the envelopes or the ballots themselves to indicate that the envelopes had been opened and the ballots tampered with.   It is true there was a possibility that they might have been tampered with, but there was no unusual interest exhibited in the election for constable, and, when the court considered all the circumstances introduced in evidence, we think it can not be said that the evidence was not legally sufficient to justify its finding that the ballots had not been tampered with.   The court made an express finding to that effect, and we can not say that it is wholly unsupported by the evidence.

The motion for rehearing will be denied.